## Newkirk *vs.* Sabler.

The right to land is exclusive; and every entry thereon without the owner's leave or license, or the authority of law, is a trespass.

A person has no right to enter upon the land of another, for the purpose of taking away a chattel, being there which belongs to the former.

Where N. sent his horses and wagon on to the land of S., after being forbidden by S. to do so, and the servant, in returning, found the fence put up at the road, so as to prevent his taking away the horses and wagon, and the servant left them on the land of S., and went to inform his master, *held* that N. had no right to enter upon the land of S. for the purpose of taking his team away. And N. having proceeded forcibly to tear down the fence, for the purpose of entering, *held also*, that S. had a right to defend his possession against such aggression, and to use as much force as was necessary to prevent N. entering his close.

If, in such case, the owner can not regain possession of his property peaceably, he can only resort to his legal remedy. And if the judge, at the trial, charges that the owner had the right to use as much force as was necessary to take down the fence and regain possession of his property, a new trial will be granted.

This was an action for an assault and battery, tried before Justice Wright, at the Ulster circuit in June, 1849. It ap-

peared that the plaintiff had sent his servant, with a team and wagon, across the farm of the defendant, upon which he entered by taking down the bars, to the house of one Roosa, after the defendant had forbidden the plaintiff's crossing his lands. On the return of the team to the place where it had entered, the bars were found fastened, by boards nailed over them. The servant, after an ineffectual attempt to get through, left the team and wagon on the defendant's land, and went and informed the plaintiff, who came and commenced tearing down the fence for the purpose of taking away his property. The defendant forbade the plaintiff's taking down the fence, but the latter persisting in his attempt, the defendant struck the plaintiff, or struck at him, with a stick. A fight ensued between the parties, in which the plaintiff received the injuries complained of; and both parties were more or less injured. The result was, that the plaintiff got the fence down, and brought away his team.

The judge charged the jury, among other things, that although the team and wagon of the plaintiff were wrongfully on the land of the defendant, it was the duty and right of the plaintiff to get them off, with the least possible injury to the premises ; and that the defendant was not justified in using personal violence to prevent him from removing his team from the premises. That the real question for them to determine, was, whether the plaintiff was, at the time of the assault, engaged in wanton and unnecessary destruction of the defendant's fences ; or whether. he was endeavoring, in the most direct way, to remove his team from the premises ; that if the jury should be satisfied from the evidence, that the force employed by the defendant was exerted for the purpose of preventing the plaintiff from removing his team from the premises, and not to preserve his fence from unnecessary injury, then they ought to find for the plaintiff. But on the contrary, if they should find that the injury the plaintiff was doing to the fence was unnecessary, and that the defendant committed the acts complained of, for the purpose of preventing such unnecessary injury to the fence, then the verdict should be for the defendant. The counsel for the defendant excepted to so much of the charge, as charged that it

was the duty of the plaintiff, and that he had a right, though his horses and wagon were upon the lands of the defendant, to remove them therefrom; and that the plaintiff was justifiable in breaking down the fence to remove them, if it was necessary to do so for that purpose; and that the defendant would not be justifiable in committing a battery to prevent him from so doing; and to so much of the charge as submitted to the jury the question which, in the opinion of the judge, was the real question for them to try.

The jury found a verdict for $50 in favor of the plaintiff. From the judgment entered on this verdict, the defendant appealed.

*T. R. Westbrook*, for the defendant.

*L. S. Chatfield*, for the plaintiff.

*By the Court*, PARKER, J. I think the learned justice erred in holding that the plaintiff had a right to enter upon the lands of the defendant for the purpose of regaining possession of his property.

The right to land is exclusive; and every entry thereon, without the owner's leave, or the license or authority of law, is a trespass. (3. *Bl. Com.* 209. 18 *John.* 385.) There is a variety of cases where an authority to enter is given by law; as to execute legal process; to distrain for rent; to a landlord or reversioner, to see that his tenant does no waste, and keeps the premises in repair according to his covenant or promise; to a creditor, to demand money payable there; or to a person entering an inn for the purpose of getting refreshment there. (3 *Black. Com.* 212. 1 *Cowen's Tr.* 411.) In some cases, a license will be implied; as if a man make a lease, reserving the trees, he has a right to enter and show them to the purchaser. (10 *Co.* 46.) Where the owner of the soil sells the chattel being on his land. As if he sell a tree, a crop, a horse, or a fanning mill, which remain within his close; he at the same time passes to the vendee, as incident to such sale, a right to go upon the

premises and take away the subject of his purchase, without being adjudged a trespasser. (1 *Cowen's Tr.* 367. *Bac. Abr. Trespass F.* 11 *East*, 366. 2 *Roll. Abr.* 567 *m. n.* 1.) And if a man, in virtue of his license, erects a building on another's land, this license can not be revoked so entirely as to make the person who erected it a trespasser, for entering and removing it after the revocation. In some cases, the motive will excuse the entry. If J. S. go into the close of J. N. to succor the beast of J. N., the life of which is in danger, an action of trespass will not lie; because, as the loss of J. N., if the beast had died, would have been irremediable, the doing of this is lawful. But if J. S. go into the close of J. N. to prevent the beast of J. N. from being stolen, or to prevent his corn from being consumed by hogs, or spoiled, the action of trespass lies; for the loss, if either of those things had happened, would not have been irremediable. (*Bac. Abr. Trespass F.*) And if a stranger chase the beast of A. which is *damage feasant* therein, out of the close of B., trespass will lie; for by doing this, although it seem to be for his benefit, B. is deprived of his right to distrain the beast. (*Bro. Tresp. pl.* 421. *Keilw.* 46, 13.)

In some cases the entry will be excused by necessity. As if a public highway is impassable, a traveler may go over the adjoining land. (2 *Show.* 28. *Lev.* 234. 1 *Ld. Raym.* 725.) But this would not extend to a private way; for it is the owner's fault if he do not keep it in repair. (*Doug.* 747. 1 *Saund.* 321.) So if a man who is assaulted, and in danger of his life, run through the close of another, trespass will not lie, because it is necessary for the preservation of his life. (*Year-Book*, 37 *H.* 6, 37, *pl.* 26.) If my tree be blown down and fall on the land of my neighbor, I may go on and take it away. (*Bro. Tres. pl.* 213.) And the same rule prevails where fruit falls on the land of another. (*Miller* v. *Fawdry*, *Latch*, 120.) But if the owner of a tree cut the loppings so that they fall on another's land, he can not be excused for entering to take them away, on the ground of necessity, because he might have prevented it. (*Bac. Abr. Trespass F.*)

Sometimes the right of action depends on the question which

Newkirk *v.* Sabler.

is the first wrongdoer. If J. S. have driven the beast of J. N. into the close of J. S., or if it have been driven therein by a stranger, with the consent of J. S., and J. N. go thereinto and take it away, trespass will not lie, because J. S. was himself the first wrongdoer. (3 *Roll. Abr.* 566, *pl.* 9. *Cro. Eliz.* 329.) Tested by that rule, the plaintiff in this suit certainly has no right of action; for he was the first wrongdoer. But it is well settled that where there is neither an express nor an implied license, nor any such legal excuse as is above stated, a man has no right to enter upon the land of another for the purpose of taking away a chattel being there, which belongs to the former. The mere fact that the plaintiff owns the chattel, gives him no authority to go upon the land of another to get it. In *Heermance* v. *Vernoy*, (6 *John. Rep.* 5,) where A. had entered upon the land of B. without his permission, to take a chattel belonging to A.; it was held to be a trespass. So in *Blake* v. *Jerome*, (14 *John.* 406,) a mare and colt were taken out of the plaintiff's field, by a person who acted under the orders and direction of the defendant, after they had been demanded by the defendant and refused to be delivered to him; and after he had been expressly forbidden to take them; and the defendant was held to be guilty of a trespass.

In this case, the plaintiff's horses and wagon were on the lands of the defendant, where they had been left by the servant of the plaintiff. They were not there by the defendant's permission. On the contrary, the plaintiff had been guilty of a trespass in sending his team across the lands of the defendant, after he had been forbidden to do so. And I think the defendant had the right to detain them, before they left the premises, and to distrain them *damage feasant.* (2 *Rev. Stat.* 427.) But it is not necessary to decide, whether the defendant detained the property rightfully or wrongfully.

The plaintiff attempted to enter upon the lands of the defendant and against his will, for the purpose of taking away his property. This he had no right to do, even though his property were unlawfully detained there. If the plaintiff could not regain the possession of his property peaceably, he should have

---

resorted to his legal remedy, by which he could, after demand and refusal, have recovered either the property itself or its value. He had no right to redress himself by force. (1 *Black. Com.* 4.) In pursuing his object, the plaintiff tore down the defendant's fence after he had been forbidden to enter, and after he had been ordered by the defendant to desist. The defendant had a right to protect himself in the enjoyment of his possession and his property, by defending them against such aggression. (8 *T. R.* 88, 299. 1 *Saund.* 296, *note* 1. 1 *Salk.* 641. 1 *Bing.* 158. 3 *Black. Com.* 5.)

The defendant can not be held liable for the injuries inflicted upon the plaintiff, on the occasion in question, unless he used more force than was necessary for the defense of his possession; and it seems he did not use enough to prevent the plaintiff's effecting his forcible entry and taking away the property. But that was a question proper to be submitted to the jury.

The judgment of the circuit court must be reversed, and a new trial awarded; costs to abide the event.

