ROBERT CAMPBELL *vs.* ENSIGN RACE.

A traveller on a highway, rendered impassable by a sudden and recent obstruction, may pass over the adjoining fields, so far as is necessary to avoid the obstruction, doing no unnecessary damage, without being guilty of a trespass.

THIS was an action of trespass for breaking and entering the plaintiff's close in the town of Mount Washington, and

was tried in the court of common pleas, before *Byington*, J. The defendant pleaded the general issue, and specified in defence a right of way of necessity, resulting from the impassable state of the adjoining highway, by obstructions with snow.

The defendant introduced evidence that at the time when the trespass was alleged to have been committed he was travelling with his team on a highway running east and west, which led to and intersected a highway running north and south, which latter highway led to and intersected another highway, on which the defendant had occasion to go with his team ; and the usual, proper, and only mode of getting on which, by a highway, was by passing over the two highways first named, when they were in a condition fit for travel; but at the time of the alleged trespass, they were both obstructed, and rendered impassable by snow-drifts ; because of which obstructions, the defendant turned out of the first highway with his team, at a place where it was rendered impassable as aforesaid, and passed over the adjoining fields of the plaintiff, doing no unnecessary damage, and returned into the second highway, as soon as he had passed the obstructions which rendered both impassable.   And he contended, that the highways being thus rendered impassable, he had a way of necessity over the plaintiff's adjoining fields, or that his so passing was excusable, and not a trespass.

But the judge ruled, that these facts constituted no defence to the action ; and a verdict having been returned accordingly for the plaintiff, the defendant alleged exceptions.

*W. Porter* and *J. C. Wolcott*, for the defendant, relied on most of the authorities cited in the opinion of the court.

*I. Sumner*, for the plaintiff.   Our law allows of no such defence as is here set up.   To justify or excuse a trespass, the strict rule of the common law applies, requiring inevitable necessity or unavoidable accident, neither of which existed in this case.   Hammond's N. P. 61 *& seq.*   The rule found in the English works, authorizing travellers to go *extra viam,* when the public ways are obstructed, was adopted because of the defective state of the law there in regard to compelling

repairs, and the consequent almost impassable condition of the roads. At common law, no action lies against a town for damages occasioned by defects in highways. *Mower* v. *Leicester*, 9 Mass. 247. The same reasons do not exist here. Rev. Sts. *c.* 24, §§ 11, 68; *c.* 25, §§ 3, 22, 24. And none of the American cases or text writers sustain the rule. See 2 Greenl. Ev. § 627; *Tisdale* v. *Norton*, 8 Met. 388, 391. The effect of establishing it, would be, to appropriate private property to a public use without compensation. Owners of lands grant· to the public only an easement within the limits of the highway. They receive compensation for nothing else, except damage actually done to their remaining lands. Rev. Sts. *c.* 24, §§ 11, 68; *Commonwealth* v. *Norfolk*, 5 Mass. 435; *Commonwealth* v. *Coombs*, 2 Mass. 492. There is no right of way here, except by grant. " No necessity will justify an entry upon another's land." *Nichols* v. *Luce*, 24 Pick. 104.

The opinion was delivered at September term, 1852.

BIGELOW, J. It is not controverted by the counsel for the plaintiff, that the rule of law is well settled in England, that where a highway becomes obstructed and impassable from temporary causes, a traveller has a right to go *extra viam* upon adjoining lands, without being guilty of trespass. The rule is so laid down in the elementary books. 2 Bl. Com. 36; Woolrych on Ways, 50, 51; 3 Cruise Dig. 89; Wellbeloved on Ways, 38; and it is fully supported by the adjudged cases. *Henn's Case*, W. Jones, 296; 3 Salk. 182; 1 Saund. 323, note 3; *Absor* v. *French*, 2 Show. 28; *Young* v. ———, 1 Ld. Raym. 725; *Taylor* v. *Whitehead*, 2 Doug. 745; *Bullard* v. *Harrison*, 4 M. & S. 387, 393. Such being the admitted rule of law, as settled by the English authorities, it was urged in behalf of the plaintiff in the present case, that it had never been recognized or sustained by American authors or cases. But we do not find such to be the fact. On the contrary, Mr. Dane, whose great learning and familiar acquaintance with the principles of the common law, and their practical application at an early period in this commonwealth, entitle his opinion to very great weight, adopts the rule, as declared in the leading case of *Taylor* v. *Whitehead*, *ubi supra*, which he says " is

the latest on the point, and *settles the law."* 3 Dane Ab. 258. And so Chancellor Kent states the rule. 3 Kent Com. 424. We are not aware of any case in which the question has been distinctly raised and adjudicated in this country ; but there are several decisions in New York, in which the rule has been incidentally recognized and treated as well settled law. *Holmes* v. *Seely,* 19 Wend. 507; *Williams* v. *Safford,* 7 Barb. 309; *Newkirk* v. *Sabler,* 9 Barb. 652. These authorities would seem to be quite sufficient to justify us in the recognition of the rule. But the rule itself is founded on the established principles of the common law, and is in accordance with the fixed and uniform usage of the community. Indeed, one of the strongest arguments in support of it is, that it has always been practised upon and acquiesced in, without objection, throughout the New England States. This accounts satisfactorily for the absence of any adjudication upon the question, in our courts, and is a sufficient answer to the objection upon this ground, which was urged upon us by the learned counsel for the plaintiff. When a right has been long claimed and exercised, without denial or objection, a strong presumption is raised, that the right is well founded.

The plaintiff's counsel is under a misapprehension in supposing that the authorities in support of the rule rest upon any peculiar or exceptional principle of law. They are based upon the familiar and well settled doctrine, that to justify or excuse an alleged trespass, inevitable necessity or accident must be shown. If a traveller in a highway, by unexpected and unforeseen occurrences, such as a sudden flood, heavy drifts of snow, or the falling of a tree, is shut out from the travelled paths, so that he cannot reach his destination, without passing upon adjacent lands, he is certainly under a necessity so to do. It is essential to the act to be done, without which it cannot be accomplished. Serious inconveniences, to say the least, would follow, especially in a climate like our own, if this right were denied to those who have occasion to pass over the public ways. Not only would intercourse and business be sometimes suspended, but life itself would be endangered. In hilly and mountainous regions, as well as in

exposed places near the sea coast, severe and unforeseen storms not unfrequently overtake the traveller, and render highways suddenly impassable, so that to advance or retreat by the ordinary path, is alike impossible. In such cases, the only escape is, by turning out of the usually travelled way, and seeking an outlet over the fields adjoining the highway. If a necessity is not created, under such circumstances, sufficient to justify or excuse a traveller, it is difficult to imagine a case which would come within the admitted rule of law. To hold a party guilty of a wrongful invasion of another's rights, for passing over land adjacent to the highway, under the pressure of such a necessity, would be pushing individual rights of property to an unreasonable extent, and giving them a protection beyond that which finds a sanction in the rules of law. Such a temporary and unavoidable use of private property, must be regarded as one of those incidental burdens to which all property in a civilized community is subject. In fact, the rule is sometimes justified upon the ground of public convenience and necessity. Highways being established for public service, and for the use and benefit of the whole community, a due regard for the welfare of all requires, that when temporarily obstructed, the right of travel should not be interrupted. In the words of Lord Mansfield, " it is for the general good that people should be entitled to pass in another line." It is a maxim of the common law, that where public convenience and necessity come in conflict with private right, the latter must yield to the former. A person travelling on a highway, is in the exercise of a public, and not a private right. If he is compelled, by impassable obstructions, to leave the way, and go upon adjoining lands, he is still in the exercise of the same right. The rule does not, therefore, violate the principle that individual convenience must always be held subordinate to private rights, but clearly falls within that maxim, which makes public convenience and necessity paramount.

It was urged in argument that the effect of establishing this rule of law would be to appropriate private property to public use without providing any means of compensation to the owner. If such an accidental, occasional and temporary

use of land can be regarded as an appropriation of private property to a public use, entitling the owner to compensation, which may well be doubted, still the decisive answer to this objection is quite obvious. The right to go *extra viam,* in case of temporary and impassable obstructions, being one of the legal incidents or consequences which attaches to a highway through private property, it must be assumed, that the right to the use of land adjoining the road was taken into consideration and proper allowance made therefor, when the land was originally appropriated for the highway, and that the damages were then estimated and fixed, for the private injury which might thereby be occasioned.

It was also suggested, that the statutes of the commonwealth, imposing the duty on towns to keep public ways in repair, and rendering them liable for damages occasioned by defects therein, furnish ample remedies in cases of obstructions, and do away with the necessity of establishing the rule of the common law in this commonwealth, which gives the right in such cases to pass over adjacent lands. But this is not so. Towns are not liable for damages in those cases to which this rule of the common law would most frequently be applicable — of obstructions, occasioned by sudden and recent causes, which have no⁺ existed for the space of twenty four hours, and of which the towns have had no notice. Besides; the statute liability of towns does not extend to damages such as would ordinarily arise from the total obstruction of a highway; being expressly confined to cases of bodily injuries and damages to property. *St.* 1850, *c.* 5; *Canning* v. *Williamstown,* 1 Cush. 451; *Harwood* v. *Lowell,* 4 Cush. 310; *Brailey* v. *Southborough,* 6 Cush. 141.

From what has already been said, the limitations and restrictions of the right to go upon adjacent lands in case of obstructions in the highway can be readily inferred. Having its origin in necessity, it must be limited by that necessity; *cessante ratione, cessat ipsa lex.* Such a right is not to be exercised from convenience merely, nor when, by the exercise of due care, after notice of obstructions, other ways may be selected and the obstructions avoided. But it is to be con·

35 *

fined to those cases of inevitable necessity or unavoidable accident, arising from sudden and recent causes which have occasioned temporary and impassable obstructions in the highway. What shall constitute such inevitable necessity or unavoidable accident, must depend upon the various circumstances attending each particular case. The nature of the obstruction in the road, the length of time during which it has existed, the vicinity or distance of other public ways, the exigencies of the traveller, are some of the many considerations which would enter into the inquiry, and upon which it is the exclusive province of the jury to pass, in order to determine whether any necessity really existed, which would justify or excuse the traveller. In the case at bar, this question was wholly withdrawn from the consideration of the jury, by the ruling of the court. It will therefore be necessary to send the case to a new trial in the court of common pleas.

*Exceptions sustained*