SARAH J. ATWOOD V. WILLIAM FROST.

*Executor's sale of devised lands.*

An executor cannot be empowered by the probate court to sell devised land of which the devisee has taken possession, for the purpose of satisfying debts of the estate. Comp. L. §§ 4353–7.

Error to. Kalamazoo.   (Mills, J.)   June 22.—October 3.

EJECTMENT.   Plaintiff brings error.   Reversed.

*Dallas Boudeman* for appellant.

*Edwards & Stewart* for appellee.

COOLEY, J.   Ejectment.   The plaintiff claims title to the land through Sarah J. Dibol to whom it was devised by Benjamin Atwood, the former owner.   Defendant claims the land under an executor's sale made for the payment of Atwood's debts.   The description in the declaration is "twenty-four acres off the south end of the west forty acres south of the highway, of the south-east quarter of section eleven, township four south of range nine west."

From the finding of facts it appears that Benjamin Atwood died April 20, 1874, and that by his will he devised the forty acres from which the land described in the declaration is taken, to Sarah J. Dibol.   The will was duly probated

May 22, 1874, and letters testamentary issued to Sylvester Fredenburg, named executor therein. December 15, 1879, the probate court made an order on the petition of the executor licensing him to sell seven parcels of land belonging to the estate, and situate in the counties of Kalamazoo and Allegan, one of which was described as "the west half of the south-east quarter of section eleven, town four south range nine west, Kalamazoo county, Michigan, except eighteen acres out of the north-west corner thereof." This description includes the land now in controversy. Under this license the executor on May 1, 1880, sold one of the parcels of land described in the license for $2500, and he had previously sold two others for $575. Neither of these was the parcel last above described. May 17, 1880, the executor petitioned for the final settlement of his accounts, and an order was made for hearing on this petition June 14th. The final account does not appear to have been filed until June 18th, and was not then settled. On July 3, 1880, the executor filed in the probate court a petition in which he recited the sales made by him as aforesaid, and stated that the sums received were insufficient for the satisfaction of the demands against the estate, of which $2232.27 then remained unpaid, and praying that the devisees and legatees who had received property from the estate under the will be decreed to pay the same in proportion to the value of the property received by them respectively. The court granted the prayer of the petition and made an order of contribution in which the sum assigned to be paid by Sarah J. Dibol was set at $378, the land devised to her being valued at $1200. Payment was ordered to be made within twenty days, and in default, the executor was authorized to proceed and make sale under the license granted the preceding December. This order of contribution was made on due notice to the parties concerned.

November 1, 1880, the executor filed a petition to correct the assessment made upon the devisees and legatees. In this petition the debts were represented to be $2582.27 instead of the sum before reported. The probate court

granted the prayer of this petition, and increased Mrs. Dibol's assessment to $431.57. It does not appear that any notice of this action was ordered or was received.

Mrs. Dibol did not pay the assessment made upon her, and on December 11, 1880, the executor sold the land devised to her, at public auction, and it was struck off to defendant as purchaser for the sum of $445. The sale was immediately reported to and confirmed by the probate court, and a deed given to carry it into effect. Plaintiff, who had previously become owner of the Dibol title, was then in possession, but defendant obtained possession afterwards and this suit was instituted.

In the circuit court the case was made to turn upon the validity of the probate sale, and that court held it to be valid. It will be noticed that it was made under the license of December 15, 1879. The sale took place more than six years after letters testamentary were issued, and it is insisted was void for that reason. Public Acts 1877 p. 126; Pub. Acts 1879 p. 120. But it is also claimed that it was void because made to enforce a decree of contribution; the statute not contemplating that such a decree shall be enforced by such a sale. This last objection to the sale appears to us conclusive.

The statute provides that the devisees and legatees who shall, with the consent of the executor or otherwise, have possession of the estate given to them by the will before their liability to contribute towards the debts, etc., is determined, shall hold the same subject to that liability. Comp. L. §§ 4353–4356. It further provides that "the probate court may, by decree for that purpose, settle the amount of the several liabilities, as provided in the preceding sections, and decree how much, and in what manner, each person shall contribute, and may issue execution as circumstances may require; and the claimant may also have a remedy in any proper action or complaint in law or equity." Comp. L. § 4357.

The action of the executor and of the probate court assumed that the land in dispute had been delivered into the

possession of Mrs. Dibol with the executor's consent. That being so the proceedings to compel her to contribute must have been taken under this statute. It was never contemplated that the executor might still treat the property as assets to be disposed of in the ordinary way. If he could sell lands as he did in this instance, he might retake personalty from a legatee and dispose of it at discretion as he might have done if it had never passed out of his hands. But surely this would have been incompetent.

The method of procedure in these cases involves substantial rights. If the probate court had ordered execution against Mrs. Dibol, and this land had been seized to satisfy the assessment made against her, there would have been a year's redemption; but by this summary process property to the value of $1200 is taken for less than forty per centum of that sum, and no redemption permitted. The defect in the proceedings is therefore of the most substantial character, and could not be overlooked even if it did not go to the jurisdiction, as we think it did.

Other objections made to the sale become immaterial.

The judgment must be reversed, with costs, and a new trial ordered.

GRAVES, C. J. and CAMPBELL, J. concurred. SHERWOOD, J. did not sit in this case.