FRANK E. ROUGH, BY HIS NEXT FRIEND, v. PETER WOMER AND STEPHEN ARNEY.

*Executors and administrators—Possession of real estate—Rents and profits—Will—Growing crops—Trover by devisee.*

1. The *exercise* of the right given to an executor by How. Stat. § 5875, to the possession of the *real* estate of the deceased, is only permissible when the *necessity* therefor arises, and until then the heir or devisee, who has entered upon the enjoyment of his estate, cannot be disturbed.

2. A son who remains in the possession of land devised to him by his father, after his death, has no occasion to apply to the probate court to obtain such possession under the *proviso* to How. Stat. § 5875, his right being undisputed, and the rents and profits not being needed for the purposes of administration.

3. Executors who enter upon land devised to an heir, who is in peaceable possession, and *forcibly* take possession of wheat growing thereon at time of testator's death, which the devisee is threshing, and carry the same away, are liable to such devisee in an action of trover for the value of the property so taken.

4. An executor has no power, *as such*, to invade at pleasure the premises of a person in peaceable possession of property, even though it belongs to the estate, and take it therefrom by force, without process; and especially must this be so when the person from whom it is taken is the owner of the property, and makes his contention to protect such ownership.

Error to Berrien. (O'Hara, J.) Argued July 11, 1889. Decided October 11, 1889.

Trover. Plaintiff brings error. Reversed, and judgment entered for plaintiff for the value of the property taken. The facts, and points of counsel *passed* upon by the Court, are stated in the opinion.

*F. J. Lewis Meyer* and *Edward Bacon*, for appellant.

*J. J. Van Riper*, for defendants.

SHERWOOD, C. J. The contest in this case is between an infant devisee, 19 years of age, and the executors of the will of George G. Rough, who died at his home in Bertrand, Berrien county, October 26, 1887.

The case was tried in the Berrien circuit court before Hon. Thomas O'Hara, circuit judge, in February last, without a jury, who after the case was submitted, made the following findings of fact, among others:

"1. The will of George G. Rough was admitted to probate December 27, 1887.

"2. The plaintiff is his son, and his next friend in this suit is the plaintiff's mother, and widow of deceased.

"3. The will provided for the speedy payment of the decedent's just debts and funeral expenses, and his widow and six children were the only beneficiaries under the will.

"4. The plaintiff herein, one of the children, was 18 years of age at the time of his father's death, and his mother, the widow aforesaid, was duly appointed to act as his guardian, on January 23, 1888.

"5. The widow was bequeathed $6,000 in money, to be paid within a year, and also all the household goods and furniture. She was to have the use of the dwelling house on the home farm until the plaintiff was 21, when she was to have the use for life of certain premises described in the will by metes and bounds. The bequests to the wife were to be in lieu of all dower. The wife, however, waived the provision made for her in the will, and elected to take under the statute.

"6. On February 13, 1888, the defendants filed an inventory showing $60,176.44 in personalty, and $42,350.50 in real estate, and of the real estate $9,975 was not specifically devised; and on the same day the defendants filed a petition in probate court, in which they stated, under oath, that the personal estate was of the value of more than $60,000.

"7. Of this personal property there was 140 acres of wheat then growing, appraised at $750, 62 acres of which stood on the home farm, of about 170 acres, which the testator specifically devised to his son Frank, the plaintiff. All of the debts of the deceased, including the funeral charges and expenses, would not exceed $500, and prior to August 30, 1888, the defendants paid legacies to the extent of $50,000, and then had in their hands $5,000 undistributed.

"8. The farm willed to Frank was the homestead of the deceased, upon which he lived with his family when he died, and from that time on Frank had had the undisputed possession of the same, and the house thereon was his home, and his mother lived with him, and his right as owner, and the possession he assumed as such under the will, have never been doubted or contested.

"9. The deceased before he died allowed Mr. Dressler to put in the wheat on the farm, and he was to receive a share of same at the machine when the grain was threshed. The plaintiff, learning that the defendants intended to claim the wheat, and take possession thereof at some time, gave them notice that he owned the land and the landlord's share of the crop of wheat thereon growing, and forbade the defendants coming upon the premises, or in any manner meddling with the same. Notwithstanding this admonition, the defendants came upon the farm when the wheat was being threshed, and with force and violence seized the plaintiff and drove him away from the machine, and took and carried away his part of the wheat, amounting to 685 bushels, which was worth at that time 85 cents per bushel.

"10. In the month of October, 1888, the plaintiff, by his guardian, demanded the wheat taken of each of the defendants, who then had possession of the same, with the exception of 24 bushels, which they had sold, and the wheat was worth, at the time the demand was made, $1.08 per bushel, and defendants refused to comply with the demand."

The following findings of law were also made by the circuit judge. In speaking of the wheat, and statute of 1887, he said:

"1. It is immaterial, however, whether it be regarded as a chattel specifically bequeathed, or whether it was to be administered as personal assets, and applied towards the payment of general legacies. The statute gives the executor or administrator the right to receive rents, profits, and issues of the realty, devised or otherwise, until the estate shall have been settled, or shall have been delivered over by the probate court to the heirs or devisees, and, no such settlement or delivery having been made in this case, the defendants might lawfully have taken possession of the crops, whether they had been sown in the life-time of the testator or not.

"2. The defendants might either have taken possession of the land itself, or have required the devisee to account for all

rents and profits, and the latter cannot complain if they have seen fit to exact but a portion of the profits. In permitting the devisee to enjoy the possession of the land and all of its fruits but the wheat in question, the devisee alone was benefited, and a waiver by the defendants of their statutory right in one particular does not stop them from asserting it in another.

" 3. The defendants were guilty of no laches in asserting their right to the possession of the wheat, inasmuch as they had not consented to its harvest, and were not advised that it was to be cut on a certain day. Their right to possession was claimed within a reasonable time, and the plaintiff was subjected to neither annoyance nor damage by reason of the trivial delay.

" 4. The plaintiff cannot recover for the value of the wheat. There was no necessity, however, for the taking of this wheat. The defendants had distributed more than $50,000 among the legatees, of which at least $30,000 was distributed to residuary legatees, and the amount of personalty still remaining in their hands was vastly disproportionate to the debts and expenses. The proceeding was not only inexcusably arbitrary, but it was unjust. Four of the other children had long been in the full enjoyment of large estates derived from their father, and to take from this young man five-sixths of his crop for distribution among the others was manifestly in violation of the testator's intention.

"5. It was never intended that executors should capriciously take possession of either realty of personalty, the right being one to be exercised only when there is no reasonable escape from its assertion, and in this case the wheat could only have been taken for distribution, the known debts being insignificant, the expenses far below the amount of personalty in the hands of defendants, and the probate debts fantastically chimerical. This court, however, is powerless to remedy the wrong. Defendants, doubtless, might have been enjoined from interfering with the grain, or disposing of it, to the injury of plaintiff, as they may now be enjoined from distributing the proceeds, but they have the technical right to the possession under the statute, and the relief indicated can only be afforded in a court of chancery, unless the probate court shall make such order in the premises, as it undoubtedly has the right to make, and the power to enforce.    *    *    *    *    *    *    *    *    *

" 6. Plaintiff was not only in the lawful possession of the

field and barn from which the wheat was removed, but of the wheat as well, and, while the defendants had the right to take possession of it, the means employed were unlawful, and the plaintiff is entitled to nominal damages, together with his costs and charges, it being hereby certified that the acts of the defendants were willful and malicious."

Judgment for nominal damages was entered for plaintiff, and for costs.

The plaintiff's counsel contend that such judgment is erroneous, and that upon the findings of fact the judgment should have been for the plaintiff; and in this contention I think they are correct.

The action is trover, and the case is before us upon the findings of the circuit judge. None of the testimony appears in the record.

By these findings of fact it, however, does appear that it was entirely unnecessary for the executors to take possession of any of the real estate, or of any of the crops grown thereon, or to take the rents and profits thereof, to pay the debts of the estate, the funeral charges or expenses, or the expenses of administration, or to pay the statutory allowances of the widow, or for the support of the family; neither was such possession or control of the land or crops ever taken by the executors before they entered and converted the plaintiff's wheat. Indeed, they knew that there was no necessity for them to take possession of the real estate or crops thereon, or the rents and profits thereof, in order to pay debts or charges of any kind in administering and settling the estate under the will of the testator; and this fact was notified by them substantially to the judge of probate by petition as early as April, 1878; and the circuit court finds not only was there no necessity for the defendants to take the wheat in question, but that the taking was inexcusable, arbitrary, and unjust, and in violation of the intention of the testator, and that their action in so doing might have been enjoined in a court

of chancery; that the plaintiff was in the lawful possession of the land and wheat at the time the latter was taken; that the means employed by defendants in taking the grain were unlawful, and the acts of the defendants in so doing were willful and malicious, but still the plaintiff could recover only nominal damages; and that the defendants were technically entitled to the possession of the wheat, if they chose to take it, and hold it until the estate was settled, unless the plaintiff obtained an order from the probate court to the contrary.

It would be a strange thing, indeed, that a proper construction of the law, written or unwritten, would compel a court to enforce a technicality which has the effect to destroy a party's rights to his property without any pretense of cause or necessity therefor, and stranger still would it appear when the rights involved are those of an infant, and the attack made thereon is willful and malicious, and by persons acting in a trust capacity, whose duty is to give protection to the very rights which are sought to be destroyed.

It is very evident that such a construction of the law is not to be allowed, and is erroneous. No matter what the language of the statute may be, such a construction cannot be within its spirit, which must always govern courts in the interpretation of the statute.

The statute, which, it is thought by the counsel for defenddants and the learned circuit judge, requires such a technical construction as was given to it at the circuit in this case, reads as follows:

"The executor or administrator shall have a right to the possession of all the real as well as personal estate of the deceased, and may lease the same from year to year, and cancel or modify any existing lease or leases given by the deceased, in the same manner that the deceased might have done in his life-time, and may receive the rents, issues, and profits of the real estate until the estate shall have been settled, or until delivered over by order of the probate court to the heirs or devisees; and shall keep in good tenantable repair

all houses, buildings, and fences thereon, which are under his control: *Provided,* That whenever, on application of the heirs, or devisees, or any of them, it shall be made to appear to the said probate court that there are no debts or liabilities outstanding and unpaid against said estate, or that the personal estate of said deceased is amply sufficient for the payment of all claims or liabilities outstanding or allowed against the said estate, the said probate court shall thereupon, by order, deliver over the said real estate of said deceased to the heirs or devisees of said estate, although the said estate shall not then have been finally settled, and thereupon the right of the said executor or administrator to the possession of the real estate of said deceased, and to receive the rents, issues, and profits thereof, shall cease: *Provided further,* That the provisions of this act shall not be construed to interfere with the possession of the homestead." How. Stat. § 5875.

It will be noticed that, while the executor has the right to the possession, that right is given in contemplation that it may become necessary to exercise it in the settlement of the estate for the purpose of the payment of claims against the estate. Hence it is that the duty of the executor is not made imperative to exercise the right in all cases, but is only permissible when the necessity arises for its exercise, and until such occasion does arise the heir or devisee, who has entered upon the enjoyment of his property and estate, ought not to be and cannot be lawfully disturbed. In other words, the right is given to the executor, and only accompanies the necessity for its exercise.

Any other construction of this statute would give to it an intention never in the mind of its makers, and the exercise of the power and right given would be manifestly wrong and unjust, and an unlawful interference with another's property and vested rights. *Streeter v. Paton,* 7 Mich. 351; *Sheldon v. Rice Estate,* 30 Id. 302; *McDaniels v. Walker,* 44 Id. 83 (6 N. W. Rep. 112); *Foote v. Foote,* 61 Id. 189 (28 N. W. Rep. 90); *Pitcher v. Douglas,* 37 Id. 341; *Van Fleet v. Van Fleet,* 49 Id. 612 (14 N. W. Rep. 566); *Holbrook v.*

*Campau,* 22 Id. 291; *Campau v. Campau,* 25 Id. 127; *Howard v. Patrick,* 38 Id. 802.

Of course there was no occasion for the devisee in this case, who was the owner of the land and the wheat under the will, and in possession of the same, to apply to the judge of probate to obtain such possession under the proviso contained in the section.

There was no occasion for the executors in this case to take possession of the land or the crop to turn the property over to the devisee. It was already in his possession.

The finding is that this crop was owned by the plaintiff. The title to it vested in the plaintiff as soon as the testator died, the same as did the title to the farm upon which it grew. It was really a part of the realty, and this statute contemplates the rents and profits are to be controlled by the executors only after possession of the realty is taken, which they never did in this case.

It was not necessary to the complete enjoyment of this property by the devisee that he should have the consent of the executors, express or implied, or the consent of anybody else, under the circumstances of this case. His rights were complete without it. *Atwood v. Frost,* 51 Mich. 360 (16 N. W. Rep. 685); *Eberstein v. Camp,* 37 Id. 178; *Kennedy v. Shaw,* 43 Id. 361 (2 N. W. Rep. 396)

The entering upon the plaintiff's property in the unlawful manner the defendants did in this case, and taking possession of the plaintiff's property by force, and the commission of a trespass and assault and battery upon the plaintiff, gave the defendants no rights which they could set up or enforce as a defense against this plaintiff's action.

An executor has no power, as such, to invade at pleasure the premises of a person in peaceable possession of property, even though it belonged to the estate, and take it therefrom by force, without process; and especially must this be so when the person from whom it is taken is the owner of the

property, and makes his contention to protect that ownership. *Waldo v. Waldo,* 52 Mich. 94 (17 N. W. Rep. 710); *Bailey v. Wright,* 39 Id. 96; *Wales v. Newbould,* 9 Id. 87; *Anthony v. Haneys,* 8 Bing. 186; *Dixon v. Clow,* 24 Wend. 188; *Newkirk v. Sabler,* 9 Barb. 652; *McLeod v. Jones,* 105 Mass. 403; *Huppert v. Morrison,* 27 Wis. 365; *Daniels v. Brown,* 34 N. H. 454; *Sampson v. Henry,* 11 Pick. 379; *Public Administrator v. Ward,* 3 Bradf. Sur. 244.

In this case the acts of the defendants are found to be unjust, wrong, willful, and malicious, and they must not be permitted to take anything to their benefit resulting from their own wrong. Neither is it necessary to turn the plaintiff over to another action for proper redress against these defendant wrong-doers.

They must not only pay for the wheat taken by their violence, but must pay the price it was worth at the time it was demanded by the plaintiff's guardian, which was $1.08 per bushel, and the interest on that sum at 6 per cent. to the date of the entry of judgment in this Court

The judgment must be reversed, and a new judgment entered in this Court for plaintiff in accordance with this opinion, with costs to plaintiff in both Courts.

The other Justices concurred.