GILBERT W. FOOTE, EXECUTOR OF THE LAST WILL AND TESTAMENT OF MAHITIBAL FOOTE, v. FREDERICK S. FOOTE, ADMINISTRATOR OF THE ESTATE OF ELISHA FOOTE.

*Estate of deceased person—If no claims against for adjustment, administration unnecessary—Settlement and distribution may be made by the heirs —Such course favored by the courts—Settlement of an alleged claim by adult heirs binding on all present and assenting thereto, in absence of fraud or mistake—Personal property—Only legal estate vests in administrator—Equitable estate in heirs or other persons interested—Estate of administrator a trust for purpose of such distribution—Personal property may be distributed without converting it into money—Such settlement and distribution binding, even if different from that provided for in will, or such as the law would make in absence of will—Claims against estate —Proceedings for allowance of are equitable in their nature—Administrator may avail himself of equitable or legal defense—Will should be presented for probate in reasonable time after death of testator—Fourteen years delay held unreasonable in this case.*

1. Plaintiff's testatrix died, leaving as her *entire* estate a promissory note given to her by defendant's decedent, on which some payments were

indorsed. Four adult children survived her, and five children of a deceased daughter, two of whom were minors, but all resided near her. A son who had not been heard from for several years was reported to have died in California, leaving a son who, at time of her death, resided in Oregon; but the evidence of either being alive at date of application for administration upon her estate, as hereinafter stated, was vague and unsatisfactory. On the day of the funeral *her four* surviving children had a consultation in regard to the note at the house of the maker, who was deceased's son-in-law, who offered to pay the funeral expenses and doctor's bill, and erect a tombstone for deceased, in satisfaction of the amount due on the note, which proposition was agreed to and the note delivered to him, and he cut his name therefrom in the presence of said heirs, without objection from any one. He paid the funeral expenses and doctor's bill, and erected the tombstone, and the adjustment thus made was treated as a settlement of the note until the application of plaintiff to be appointed administrator of his mother's estate, made nearly fourteen years after her death. Soon after this event the maker of the note died, and defendant was appointed administrator of his estate, whereupon plaintiff presented the note to the commissioners on claims for allowance. Upon a hearing the claim was disallowed, but on appeal to the circuit court a verdict was obtained for the amount claimed due thereon. Proof of the alleged settlement was made on the trial, but excluded, from the consideration of the jury, under the charge of the court, for the reason that the heirs were not *all* present, and the administrator, the legal representative of the estate, was not bound thereby. The court also refused certain requests proposed by defendant, copies of which are found on page 191 of the opinion.

*Held*, that the question of such alleged settlement, and of the performance by defendant's testator of the conditions by him to be performed, should have been submitted to the jury, and if established —it not being claimed that any fraud was practiced on either side, or mistake made—such settlement was upon a sufficient consideration, and binding upon all the heirs present and participating therein, or assenting thereto.

2. Only the *legal* estate in *personal* property vests in an administrator, the equitable being in the heirs or other persons entitled to distributive shares thereof; and the administrator's estate is a *trust* created *only* for the purpose of laying hold of the estate and making *such* distribution.

3. In the absence of creditors, the heirs or legatees of a deceased person may collect the personal estate, and make such distribution thereof among themselves as they may agree to and carry out, without administration of the estate. The law favors such arrangements, and such distribution may be had without converting the personal prop-

erty into money, and will be binding on all parties to the agreement, even though not such as the decedent has made by his will, or as the law would make in case of his death intestate.

4. Proceedings under the statute for the examination and allowance of claims against an estate, whether before commissioners or the courts, are equitable in their nature, and governed by equitable principles; and the administrator is entitled to avail himself of any equitable or legal defense existing against the claim presented for allowance.

5. Justice to all parties interested in the provisions of a will requires that, under the statutes of Michigan, a party holding the will, or one having knowledge of its existence, and under which he claims an interest in the legacies provided for therein, shall secure its probate within a *reasonable* time after knowledge of the testator's death, or, failing to do so, he may bar himself from claiming any benefit under its provisions; and upon the record in this case, *fourteen years* delay would be unreasonable, and constituted a proper defense to plaintiff's claim.

Error to St. Joseph.   (Pealer, J.)   Argued April 7, 1886. Decided April 29, 1886.

The appellee recovered a verdict, which is reversed.   The facts are stated in the opinion, and in head-note 1.

*H. P. Stewart* and *John B. Shipman*, for appellant:

Administration of Mahitibal Foote's estate should not have been granted.   There were no claims to be adjusted, and distribution could as well be made of the property as of money. Besides, the will specifically disposed of everything (*Walworth v. Abel*, 52 Penn. St. 370; 3 Redfield on Wills, 89; *Fretwell v. McLemore*, 52 Ala.' 124; *Carter v. Owens*, 41 Id. 217); and this Court has held that the interest of legatees or devisees under *such* wills vests at once, without even an order of distribution: *Sutphen v. Ellis*, 35 Mich. 449; *Lamore v. Frisbie*, 42 Id. 186–190; *Richards v. Pierce*, 44 Id. 444–47; and the same question was mooted and nearly decided in *Needham v. Gillett*, 39 Id. 574–6.

The allowance of claims barred by the statute of limitations is forbidden:   How. Stat. § 5896; and had Mahitibal Foote lived nine months longer the note would have been barred.   It is claimed that § 8722 extends the right of action for two years after letters of administration were issued to plaintiff; but when should these letters have been issued? How. Stat. § 5797, answers by requiring the delivery to the

probate court of a will, within thirty days after the testator's death, for probate, and the two sections must be read together : *Biddle v. Wendell*, 37 Mich. 452–55.

The settlement of the claim in question was fully shown, was binding upon all parties to it, and none of them could be permitted to defeat it through a probate court, where no creditors' rights were involved: *Hibbard v. Kent*, 15 N. H. 516; *Clarke v. Clay*, 31 Id. 393 ; *George v. Johnson*, 45 Id. 456 ; *Taylor v. Phillips*, 30 Vt. 238; *Babbitt v. Bowen*, 32 Id. 437 ; *Kilcrease v. Shelby*, 23 Miss. 161; *Reid v. Butt*, 25 Ga. 28; *Needham v. Gillett*, 39 Mich. 574–6; *Galloway v. Gibson*, 51 Id. 136–7; and the court erred in excluding the evidence of such settlement from the jury.

A payment to the legatees at any time after the death of the testatrix would have been good : *Erwin v. Lapham*, 27 Mich. 312; *Sutphen v. Ellis*, 35 Id. 446–51; *Proctor v. Robinson*, Id. 284–95 ; *Richards v. Pierce*, 44 Id. 444–47 ; and a recovery should not have been allowed without proof that the note had not been paid since the death of the payee, lapse of time for half the period existing in this case creating a presumption of waiver or settlement of their rights by the parties interested : *Stover v. Duren*, 3 Strobhart (S. C.) 448 ; *De Cordova v. Smith*, 9 Texas, 129.

No interest should have been allowed on the claim: *O' Connor v. Beckwith*, 41 Mich. 660.

*William Sadler*, for plaintiff:

While adult heirs may settle an estate, did they do so in this case, or has mere lapse of time, under our statutes, defeated a recovery on the note ? I insist not. It is shown that adult and minor heirs were not present, and it does not appear that they knew of her death or of this pretended settlement; then how can they or this administrator be bound ? But the heirs present are not shown to have agreed to anything ; they at most said nothing in reply to the proposition for settlement. Where parties meet to adjust their mutual accounts by a settlement covering *all* claims, and one of them withdraws while some accounts remain unsettled, and refuses to go further, the whole settlement is defeated : *The Tioga Manufacturing Co. v. Stimson*, 48 Mich. 216; and if this be so the absence of Gaylord Foote or his son, and of the children of the deceased daughter, had the like effect.

The minds of the necessary parties did not meet on any state of facts which would constitute a settlement; there was no such mutual assent as is necessary in such a case (Chitty

on Contracts, 8); and the offer and acceptance cannot of themselves constitute a contract unless the acceptance is absolute and unconditional: *Finley Shoe & Leather Co v. Kurtz,* 34 Mich. 92; *Ahearn v. Ayres,* 38 Id. 692–3; *Eggleston v. Wagner,* 46 Id. 610–23; *Wagner v. Eggleston,* 49 Id. 218–23.

Mahitibal Foote lived in her son-in-law's family as a member of it, and no contract relations existed between them, and he could have no room charges or the like against her (*Mason v. Dunbar,* 43 Mich. 410); and if a part of a contract is void for any cause, the contract falls, for the assent is to it as a whole: *Jackson v. Evans,* 44 Mich. 510–13; and it was unconscionable for the maker of the note to claim that he had paid it, nor could he have enforced such a claim: *Dorrill v. Eaton,* 35 Mich. 302; *Gibson v. Pelkie,* 37 Id. 380; *Myer v. Hart,* 40 Id. 517–24; *Butler v. Duncan,* 47 Id. 95–7; *Storrs v. Scougale,* 48 Id. 387–401.

Settlements made with unusual haste after funerals should be discouraged: *Miller v. Stepper,* 32 Mich. 196–7; and one's assent may be presumed to that which benefits him, but not to that which is prejudicial: *Higman v. Stewart,* 38 Id. 524.

It was the duty of the court to instruct the jury to disregard the alleged settlement for the reason stated: *Penn. Mining Co. v. Brady & Co.,* 16 Mich. 332–41; *G. T. Ry. Co. v. Nichol,* 18 Id. 170–80; *Van Valkenburg v. Rogers,* Id. 181–93; *Kelly v. Hendrie,* 26 Id. 255–63; *Roberts v. Field,* 27 Id. 337–47; *Wagner v Eggleston,* 49 Id. 218–23.

SHERWOOD, J. On the eighteenth day of May, 1853, Mahitibal Foote owned a farm of eighty acres of land in St. Joseph county, and on that day sold it to Elisha Foote, who was her son-in-law, and in part payment therefor took back the following note:

" For value received I promise to pay Mahitibal Foote the sum of eight hundred dollars, to be paid in annual payments of one hundred dollars, the first payment to be made one year from the date of this instrument, or as soon after the expiration of that time as the said Mahitibal Foote may think proper to commence drawing. There is to be no interest on the above amount, or on any or either of the payments, as long as the said Mahitibal Foote may see fit to make it her home with the undersigned, Elisha Foote.

" *Sherwood,* May 18, 1853.          ELISHA FOOTE."

After this note was given, Mahitibal went to live with

Elisha, and continued to reside with him, occupying separate rooms in the house, until she died, on the twenty-second day of September, 1867. While she lived, Elisha paid to Mahitibal on the note, May 18, 1853, $50; June 19, 1854, $50; June 13, 1862, $35. These payments are all indorsed on the note. There is also on the note an entry in pencil: "Paid on the note, $266.15." This item is controverted.

Mahitibal was 82 years old when she died. At the time of her death her children then known to be living were Gilbert W. Foote, above mentioned, Sarah L. Goss, Clarissa S. Foote, and Augusta Foote. She had another daughter, Anna Childs, who had died several years before the death of Mahitibal, leaving five children, two of whom were minors when Mahitibal died. There was also another of Mahitibal's children by the name of Oliver Gaylord Foote, about whom but little seems to have been known for many years before his mother's death, except that it was reported that he went to California and there died, leaving a son by the name of Oliver James Foote, who resided, as understood, in Oregon at the time of the death of his grandmother.

It was claimed, however, upon the trial, by one of the witnesses, that Oliver Gaylord Foote wrote to some one in St. Joseph county inquiring after his mother's estate two or three years after her death. It was also rumored that this son was alive seven or eight years ago. The evidence is very vague as to whether this father or son were either of them alive at the time the administration was applied for on Mahitibal's estate.

The record, which contains all the evidence in the case, further shows that Mahitibal made a will, reading as follows.[1]

---

[1] "In the name of God, amen, I, Mahitibal Foote, of the age of eighty-two years, of the township of Mendon, in the county of St. Joseph, and State of Michigan, do hereby ordain, publish, and declare this to be my last will and testament, in manner following, that is to say:

"I give and demise to my son Oliver Gaylord Foote two hundred (200) dollars. I give and demise to my daughter Sarah L. Goss six dollars, and discharge a debt against her of seventy-four dollars. I give and demise to the legal heirs of my daughter Charliany Childs, deceased, the sum of ten dollars. I also give and demise to my son Gilbert W. Foote, and each of my daughters Augusta Foote and Clarissa S. Foote, the sum of eighty dollars each, should there be so much left after paying my nec-

This was made about three months previous to her death. She resided at the time, as did one of the witnesses to the will, who was her granddaughter, a child of Mrs. Goss, at Mendon, St. Joseph county.

It was conceded upon the trial that at the time application was made for administration there were no claims against the estate of Mahitibal. It further appears, so far as the record shows anything upon the subject, that she left no property at her decease, except what might be owing upon the above-mentioned note, if anything was then due her thereon.

It further appears that on the day of her funeral, and after the burial had taken place, all the children then known to be living, viz., Gilbert W. Foote, Sarah L. Goss, Clarissa S. Foote, and Augusta Foote, assembled at the house of Elisha Foote, the maker of the note, and had a consultation in regard to the same, and the claim made by Elisha against the note. The interview upon the subject seems to have been a friendly one, and the discussion had was as to what should be done with the note.

Elisha asked the heirs to bring forward the note. Augusta produced it. He then told them he wanted a settlement, as the heirs were then all together; "that he thought they could arrange the matters without trouble, and have it set-

---

essary expenses and funeral charges. Should there be any left after paying all my necessary expenses, the residue and balance of my property and effects, of whatever name and nature I give and demise to my son Gilbert W. Foote, and to each of my daughters, Sarah L. Goss, Augusta Foote, and Clarissa S. Foote, to each share and share alike; but should either of the last four named persons die °before receiving their legacy, then, and in that case, their children, if any alive, if not their legal representatives, shall be entitled to and receive their parent's share of such legacy; and, further, if Oliver Gaylord Foote shall not live to receive the two hundred dollars himself within three years after my decease, then I give and demise five dollars to his son, Oliver James Foote, and the balance of the said two hundred dollars is to be divided equally, share and share alike, between Gilbert W. Foote and Sarah L. Goss, Augusta Foote and Clarissa S. Foote, and their heirs. This will is to take effect at the expiration of two years after my decease.

"In witness whereof I have hereunto set my hand and affixed my seal this tenth day of June, 1867.

"MAHITIBAL FOOTE,
"By FORDYCE JOHNSON,
"By request of the Testator."

tled; that the note called for $800, and he was to pay no interest on it as long as she saw fit to live in his family; that instead of living in his family he had to furnish her with two separate rooms, and warm them for her; that if they would give up the note he would pay the funeral expenses and doctor's bill, and buy a tombstone for deceased, and call it square;" or they might, if they were not satisfied, settle it by law, and he would put in his claim against it, "which would more than balance the note." They might do either way, as they chose.

To this proposition Clarissa said she had no claim on it; Gilbert W. Foote, the present administrator, said he had no claim, and thought it better be settled in the way proposed, and have no trouble about it; Mrs. Goss said she did not want anything that did not belong to her, but all that did, and neither she nor Augusta objected to making the arrangement proposed; and, after further talk about the matter, and after the note and indorsements had been read by John Foote, and a further suggestion from one of the grandchildren that Elisha had earned the note, the note was handed to Elisha, who, in the presence of all of them, cut his name off the note and put it in his pocket, without any objection from any one; and he subsequently paid Mahitibal's funeral expenses, her doctor's bill, and purchased the gravestone, as he had promised; and, so far as the record shows anything, it tends to show that the adjustment made of the matter of the note, there at the home of Elisha, has ever since been treated and regarded as a settlement of the claim now made until the death of Elisha, a few years since—in fact, until Gilbert W. Foote made application to be appointed administrator of Mahitibal's estate, the last of the year 1882; and on the seventeenth of April, 1883, said will was admitted to probate, and he received his appointment as such administrator with the will annexed.

Soon after the death of Elisha Foote, and on the third day of January, 1883, his son Frederick S. Foote was appointed administrator of his father's estate; and, after commissioners were appointed to hear and examine claims against Elisha's

estate, Gilbert W. Foote, as administrator of Mahitibal, presented the said note to the commissioners for allowance. After hearing the proofs in the matter, the claim was disallowed, and Gilbert W. took an appeal therefrom to the circuit court of St. Joseph county, where the cause was tried before Judge Pealer, by jury; and under the proofs there introduced, and charge of the court, a verdict was obtained, allowing the claim made upon the note in favor of Mrs. Foote's estate at the sum of $1,393.93, and judgment was entered thereon accordingly. The administrator of Elisha Foote's estate now brings error, and the case is before us for review.

It will be noticed by the terms of the will Oliver Gaylord Foote was to have $200, but if he should not live to receive it in three years after the death of the testatrix, then his son was to have $5, and the $200 was to be divided equally between Gilbert W. Foote (the plaintiff) and his three sisters. To Mrs. Goss she gave $6 and forgave a debt of $74; to the five children of Mrs. Childs she gave $10; and to said Gilbert W. and his two sisters Augusta and Clarissa she gave $80 each, should there be that amount left after paying testatrix's necessary funeral charges and expenses; and if then anything more was left, she gave it to Gilbert, Clarissa, Sarah, and Augusta. Oliver Gaylord appears to have been regarded as dead by the whole family. Mrs. Childs' heirs would be entitled to two dollars each; the son of Gaylord to five dollars; so that under the provisions of the will the only parties, if Gaylord's legacy lapsed,—if there was any estate,— interested therein, to the extent of requiring the attention of the court, were really the four residuary legatees, all of whom were present and participated in the settlement claimed to have occurred at the home of Elisha Foote, Sr., on the day the testatrix was buried.

Under these circumstances, and as it clearly appears that there were no creditors of Mahitibal Foote's estate, the defendant's counsel claim that there should have been no administrator appointed,—that there was nothing for him to do.

The legal estate only in personal property vests in the administrators; the equitable estate therein is in the heirs, or

other persons entitled to distributive portions thereof.    The estate of the administrators therein is a trust for that purpose, and is created only for the purpose of laying hold of the estate and making such distribution.    When there are no creditors, the heirs or legatees may collect, if they can, the estate together, and make such distribution among themselves as they may agree to and carry into effect, without the intervention of any administrators; and the law favors such arrangements.    In such cases it is only where the heirs or legatees fail to make such collection and distribution that administration becomes necessary.

When such arrangement and distribution have been made and executed, it will be binding, both in law and equity, as between the parties making it, whenever the rights of creditors do not intervene.    And where there are no creditors, the heirs or legatees may divide up and distribute the personal property of the decedent, without converting it into money, in such manner as they see fit; and when such division has been executed, even though it is not such as the decedent has made by his will, or such as the law would make when there is no will, it will be binding upon all the parties to the agreement: *Walworth v. Abel*, 52 Penn. St. 370; *Calhoun v. Hays*, 8 Watts & S. 132; *Bavington v. Clarke*, 2 Pen. & W. 123; *McMahan v. McMahan*, 13 Penn. St. 380; *Lee v. Gibbons*, 14 Serg. & R. 105; 3 Redf. Wills, 89; *Carter v. Owens*, 41 Ala. 217; *Fretwell v. McLemore*, 52 Ala. 124; *Hibbard v. Kent*, 15 N. H. 516; *Clarke v. Clay*, 31 Id. 393; *Taylor v. Phillips*, 30 Vt. 238; *Babbitt v. Bowen*, 32 Id. 437; *Kilcrease v. Shelby*, 23 Miss. 161; *Needham v. Gillett*, 39 Mich. 574.

By the terms of the claimed settlement in this case all the estate was disposed of, and the heirs with whom Elisha, Sr., made the settlement were fully satisfied, and among whom was the heir who has been appointed administrator of Mrs. Foote's estate.    It is not claimed any fraud was practised upon either side in making the settlement, or any mistake made; all the parties to the agreement were familiar with the facts and circumstances under which it was made.    If such

settlement was made as claimed, we think it was upon a sufficient consideration, and all the parties present and participating therein, or assenting thereto, are bound thereby, and estopped from making any claim to said note, or to any of the proceeds thereof.

The order appointing Gilbert W. Foote administrator of Mahitibal's estate is not so brought before us that we can review the proceedings had in that case, or pass upon them intelligently.

It is not easy to discover, if there was a settlement and an agreement among the heirs of Mahitibal as to what disposition should be made of the note, and upon what conditions, what necessity there could be, upon the facts stated in the record, for administration upon her estate, especially after the conditions were performed and the disposition made as agreed upon.

Whether or not such settlement had been had and conditions performed were certainly proper questions to have been submitted to the jury in this case, if the plaintiff could maintain the suit at all; but the court told the jury: "You will have nothing to do with the settlement; * * * there will simply be the question of how much will be due on this note;" and the court further charged the jury that they should deduct the amount which was indorsed on the note before Mrs. Foote's death, and render their verdict against the defendant for the balance. This was error.

Upon these subjects counsel for the defendant requested the court to charge the jury that—

"1. Whether a settlement of a claim is right or wrong, the law holds a party to diligence who proposes to avoid it. If he acquiesces for an unreasonable length of time, he will be bound by it. If he seeks to repudiate it, he must do so at the first opportunity, or account for and excuse the delay. By acquiescence for an unreasonable length of time, without excuse, he affirms the settlement, whether it was originally right or not. In this case those interested in the claim, if any ever existed, waited for more than fourteen years after, as the defense claim, it had been adjusted. This was an unreasonable length of time to wait. If, therefore, such settlement as is

claimed was effected of the claim, you will find for the defense.

2. When a matter is settled by the parties in interest, and there is no unfairness, and all the facts are equally known to both sides, the settlement is final. This principle acquires new force when death has interposed to close a party's lips.

3. If the deceased, Elisha Foote, settled with some of the heirs for their interest in the obligation sued on, you will deduct from the face of the note the share which, under the will, those of the heirs participating in the settlement of the claim would have been entitled to out of it, and only allow the balance of the claim."

We think, as the case stood when the charge was made, these three requests were entirely proper, and should have been given, and the failure so to do was error.

The proceeding authorized by the statute for the purpose of examining, allowing, and adjusting claims against an estate, whether before commissioners or the courts, is an equitable one, and governed by equitable principles; and the administrator of Elisha Foote's estate, in this case, was entitled to avail himself of any equitable, as well as legal, defense which existed against the claim presented for allowance against Elisha's estate.

We think it substantially appears from the record that all the heirs of Mahitibal were present at the time the note was given up and canceled, then or since known to be living, except, perhaps, some of the children of Mrs. Childs; but these all lived in the vicinity of Mahitibal at the time of her death, or knew all about the circumstances.

And it further appears that for more than fourteen years after that meeting of the heirs and that arrangement was made with the note, whatever it was, all parties had acquiesced in it, and no one of them had ever claimed any interest in the note until Gilbert W. made his application for the appointment of himself administrator, and this was not done until after Elisha, Sr., had died.

He and the other heirs evidently knew of the existence of the will all this time, and of its provisions; for Gilbert produces it for probate, and the object of which at this late day

is made clearly to appear by the proceedings now, before us. No other object or purpose of these probate proceedings appears except to try to compel payment of said note by the defendant, as Mahitibal had no other estate when she died.

In view of the fact of the settlement made, and which, in considering this record, must be regarded as made, as proposed to be shown, and was shown, upon the trial, and excluded by the court, this proceeding is most unjust and inequitable. Whatever interests the heirs may have had at the time Mrs. Foote died in the claim now made against Elisha's estate certainly was taken in consideration at the time of the settlement, and the provisions of the will now probated disclose, taken in connection with the other testimony in the case, that the entire interest in the note (except a few dollars given to parties who have never made any claim thereto), subject to the equitable set-off of Elisha, passed to the heirs who made the settlement; and, if such settlement of the note was actually made, it would be clearly unjust not to allow the defense now made by Elisha's administrator to prevail. ·

Had a few more months elapsed before Mahitibal's death, the claim now made by Gilbert W. Foote would have been barred, both at law and in equity, by the statute of limitations, beyond any question; and it is claimed by defendant's counsel that more than fourteen years having elapsed since the death of Mrs. Foote, and the parties for whose benefit the claim is now made having all this time had the custody of the will, and neglected their statutory duty to present the same to the court, and secure probate thereof, and in the meantime Elisha Foote having died, the claim now made by the testatrix's administrator should, in equity and good conscience, be held barred by the statute of limitations.

We think there is much force in this position, and we are not prepared to say it is not well taken. We do not, however, deem it necessary to fully decide that question now, as the other errors noted are sufficient to make a reversal of the judgment necessary. But it is very certain that justice to all parties interested in the provisions of a will requires that,

under the statutes in this State as they now exist, a party holding the will, or one having knowledge of its existence, and under which he claims an interest in the legacies, must secure its probate within a reasonable time after he knows of the death of the testator; or, failing so to do, he may bar himself from making claim under its provisions to the benefits thereof; and we think a lapse of fourteen years after a knowledge of the death of the testator, under such circumstances (and as they appear in this record), an unreasonable time, and that such defense to the claim of the plaintiff sought to be enforced against the estate of Elisha was a proper one to be made.

Every person having the custody of any will is required, within thirty days after he knows of the death of the testator, to deliver the same into the probate court having jurisdiction of the case, or to the executors named therein. And it is made the duty of the judge of probate to appoint a time and place for proving it, and give notice thereof, either personally or by publication, to the persons interested; and, if no sufficient cause is shown on the hearing against it, on proofs made by at least one of the subscribing witnesses, admit the same to probate. How. Stat. §§ 5797–5802, inclusive.[1]

It must be a case of extraordinary circumstances indeed

---

[1] "Sec. 5797.—Every person other than the judge of probate, having the custody of any will, shall, within thirty days after he has knowledge of the death of the testator, deliver the same into the probate court which has jurisdiction of the case, or to the person named in the will as executor.

"Sec. 5798.—Every person named as executor in any will shall, within thirty days after the death of the testator, or within thirty days after he has knowledge that he is named executor, if he obtains such knowledge after the death of the testator, present such will to the probate court which has jurisdiction of the case, unless the will shall have been otherwise deposited with the judge of probate; and shall, within the period above mentioned, signify to the court his acceptance of the trust, or make known in writing to such court his refusal to accept it.

"Sec. 5799.—Every person who shall neglect to perform any of the duties required in the two last preceding sections, without reasonable cause, shall be liable to each and every person interested in such will, in neglect, of ten dollars damages for each and every month he shall so the sum after the thirty days above mentioned, to be recovered in an action on the case, with costs.

"Sec. 5800.—If any person having the custody of any will, after the

that would permit a legatee under a will, or the executor named therein, or other person, who has had the custody of a will, or knowledge thereof, and who has disregarded the statutory provisions herein referred to, and allowed the period of the statute of limitations to elapse without delivering it, to the probate court or securing probate thereof, to enforce claims in favor of the estate of the testator wherein such person is interested against its debtors or their estates, when the latter makes defense as in this case.

The judgment at the circuit must be reversed, and a new trial granted, with costs.

The other Justices concurred.

---

death of the testator, shall, without reasonable cause, neglect to deliver the same to the probate court having jurisdiction of it, after he shall have been duly notified by such court for that purpose, he may be committed to the jail of the county, by warrant issued by such court, and there be kept in close confinement until he shall deliver the will as above, directed.

" Sec. 5801.—When any will shall have been delivered into or deposited in any probate court having jurisdiction of the same, such court shall appoint a time and place for proving it, when all concerned may appear and contest the probate of the will, and shall cause public notice thereof to be given by personal service on all persons interested, or by publication under an order of such court, in such newspaper printed in this State as the judge shall direct, three weeks successively, previous to the time appointed; and no will shall be proved until notice shall be given as herein provided.

"Sec. 5802.—If no person shall appear to contest the probate of a will at the time appointed for that purpose, the court may, in its discretion, grant probate thereof on the testimony of one of the subscribing witnesses only, if such witness shall testify that such will was executed in all the particulars as required in this chapter, and that the testator was of a sound mind at the time of the execution thereof."