RULIEF A. MORSE v. THE ESTATE OF REUBEN ALLEN.

*Equitable assignment—Estates of deceased persons—Claims.*

1. The doctrine of equitable assignment applies where the assignor and assignee alone are interested in the fund, or where the assignee has the first lien upon it, as where an attorney and his client agree that he shall receive for his services a certain amount out of the judgment; citing *Patten v. Wilson*, 34 Penn. St. 299; *Whitehead v. Fitzpatrick*, 58 Ga. 348.

2. A testator, after giving his wife a life-estate in his lands, devised the remainder to two of his children. After the death of the mother, a third child presented a claim against her father's estate, based upon the agreement of the mother, the other children, and the executors of the father's will that upon the death of the mother the claimant should receive from the amount due the mother on account of the income

of the life-estate (the land having been sold and converted into money) compensation for the care and support which she should furnish the mother. And, in affirming an order disallowing the claim, it is held:

*a*—That the case of *Foote v. Foote*, 61 Mich. 181, goes no further than to hold that, where the rights of creditors do not intervene, the heirs may divide and distribute the personal property of an estate in such manner as they see fit.

*b*—That all of the creditors of the mother's estate were entitled to share equally in the fund due from the husband's estate, and that their claims must be allowed by the probate court before any one of them is paid.

*c*—That the father's executors are entitled to their day, in a direct proceeding in the probate court, to determine the amount of and the income from the life-estate, and the amounts which have been paid thereon, and that the representatives of the two estates are the proper parties to such a proceeding.

Error to Cass. (O'Hara, J.) Argued January 18, 1894. Decided March 20, 1894.

Appeal from the allowance of a claim in probate court. Claimant brings error from a judgment of disallowance in the circuit court. Affirmed. The facts are stated in the opinion.

*Harsen D. Smith,* for appellant.

*Howell & Carr,* for the estate.

GRANT, J. Reuben Allen died in 1863, leaving a widow (Demaris Allen) and three children (Joseph, Alzina Emerson, and claimant). His property consisted chiefly of real estate. By his will his wife had a life-estate in all his property, after giving claimant $50, and each of her three sons $25. The remainder of his estate was bequeathed to Joseph and Alzina. Joseph and Matthew Emerson, the husband of Alzina, were made executors. They converted the real estate into money, realizing between $4,000 and $5,000. From 1863 to 1882 the executors paid the widow $150 per year. Subsequently, they paid her only $20.75. She died

in 1888. She lived by herself until December, 1880, during which time she was cared for by a Mrs. Britton, who was paid by Mr. Emerson. Soon after Reuben's death, Joseph took $1,600 and removed to Kansas. Mrs. Emerson received $600. Mrs. Morse was evidently dissatisfied with the terms of the will, and on November 5, 1873, she executed a bond to the executors in the penal sum of $3,000. This bond contained an agreement that the executors should transfer to her $1,000, and that at the death of Demaris they would divide the balance of the estate of Reuben so that each of the heirs should share equally and alike in such estate. She agreed to pay the annual interest on all such sums as the executors advanced to her for the use and benefit of Demaris, and, if the interest on the amount of said estate was not sufficient for her use and support, then Mrs. Morse agreed to pay an equal proportion of the principal that had been advanced to her, to make the proportions equal. The executors paid her the $1,000.

Joseph died in 1891, and Mr. Emerson in 1877. In December, 1880, Mrs. Morse took her mother to her own home, and wrote to her brother, Joseph, about the situation. He came the following February, and it is claimed by claimant that an agreement was then made—which was assented to by all the parties interested in the estate, including the acting as well as the legal executor—that she and Mrs. Emerson should support and take care of their mother, each keeping an account of what they expended, and at her death bring in their bills against the estate of Reuben, and that they should be paid by that estate out of what the estate owed the mother. By the term "acting executor" is meant that Fred Emerson, the son of Matthew, assumed to act after his father's death. It appears that after this alleged arrangement the

mother again lived by herself a short time, then went to Mrs. Emerson, and finally to claimant, who took care of her the most of the time. Her statement of the arrangement is as follows:

"We were to take care of her, and keep account of it; speak of it in the settlement, and we should have our pay. * * * If she could not keep house, we would have to take care of her, you know, and we should each of us keep an account of the time she stayed with us; that I should keep an account of the time she stayed with me, and they would keep an account of the time she stayed with them, and we were to have our pay—I was, and she was—from the estate of Reuben Allen."

Claimant's son testified that Joseph said to him:

"Your mother and Mrs. Emerson will have to take care of her, and I want them to keep an account of it, to be settled for out of the estate,—what is due her from the estate."

He also testified to a conversation with Fred Emerson to the like effect, but this was incompetent, since he was not an executor, and could in no way bind the estate.

Claimant paid upon her bond only $169. The claim presented amounts to $2,100.50, the principal items of which are: For board, $1,180; services taking care of her, $594; board of Mrs. Britton from March 11, 1887, to August 5, 1888, while helping Demaris, $216.

The contention of claimant is that the agreement amounted to an equitable assignment to Mrs. Morse, *pro tanto,* of the indebtedness due Mrs. Allen from her husband's estate, and that Mrs. Morse, to that extent, is subrogated to the rights of Mrs. Allen against the estate.

The doctrine of equitable assignment, which is well established, is inapplicable to this case. That doctrine applies where the assignor and assignee alone are interested in the fund, or where the assignee has the first lien upon it, as where an attorney and his client agree that he

shall receive for his services a certain amount out of the judgment. *Patten v. Wilson*, 34 Penn. St. 299; *Whitehead v. Fitzpatrick*, 58 Ga. 348. The authorities in support of this rule are numerous. The fund in the present case was the amount due the estate of Demaris Allen from the estate of Reuben Allen. All her creditors are entitled to share equally in that fund. The claims against her estate must be presented, and allowed by the court, before any claimant is entitled to a share of it. The estate of Mrs. Allen can only be legally distributed by the administrator acting under the direction of the probate court. The case of *Foote v. Foote*, 61 Mich 181, goes no further than to hold that, where the rights of creditors do not intervene, the heirs may divide and distribute the personal property of an estate in such manner as they see fit. Here claimant herself is a creditor, and the rights of other creditors intervene, who are entitled to share equally with her in the distribution of the estate, which, as appears by this record, is not sufficient to pay all the claims. Furthermore, there has been no settlement between the two estates, and the amount of Mrs. Allen's estate has not been determined. The executors of Reuben Allen's will are entitled to their day in court, in a direct proceeding in the proper forum, to determine the amount of and the income from the life-estate, and the amounts which have been paid thereon. The probate court is the proper forum, and the representatives of the two estates the proper parties to such a proceeding.

We think the circuit court properly directed the disallowance of the claim, and the judgment is affirmed.

McGRATH, C. J., LONG and MONTGOMERY, JJ., concurred. HOOKER, J., did not sit.