(Surrogate's Court, Richmond County. November, 1895.)

1. WILLS—ESTOPPEL TO OFFER FOR PROBATE.

Testatrix, about a month before she died, executed two wills, one six days before the other. Both wills were in the handwriting of her husband. By the first will the husband was given a life estate in testatrix's property, and made trustee for her daughter, and by the second will he was given a fee simple. He offered the first will for probate, and acted under it until his death, 19 years afterwards, when the second will was found among his papers. *Held*, that the husband had elected to take under the first will, and the persons claiming under him were estopped to offer the second will for probate.

2. SAME—PROOF OF FACTUM.

In a proceeding for the probate of a will giving the husband of testatrix her entire estate, without any provision for her only child, a daughter 12 years old, which will was executed 6 days after a previous will, by which the husband was given a life estate, and the daughter was given the remainder, the only living person who was present at its execution was one of the subscribing witnesses. He testified that testatrix, who was his sister, said that her husband was not quite satisfied with the first will, and that she would have to make another; that the witnesses were called into the room by testatrix's husband; that he informed them what they were called for; that he took the paper out of his pocket, and read it over; that testatrix was then raised up in bed, and a pen put in her hand by her husband; that, after she signed the paper, he took it from her, and passed it over to the witnesses to sign, and that, after they had signed it, it was handed back to the husband; that testatrix signified her acceptance by nodding her head in reply to a question asked by her husband. There was also evidence that, for several days before the execution of such will, testatrix had been under the influence of opiates. *Held*, that the proof of the factum of the later will was not sufficient.

Proceeding for the probate of the will of Josephine M. Lyman, deceased. Dismissed.

James L. Bennett, for proponent.
Amasa A. Redfield, for contestant.

STEPHENS, S. Josephine M. Lyman died at the city of Philadelphia, in the state of Pennsylvania, on the 27th day of December, 1874. She left, her surviving, her husband, William H. Lyman, now deceased, and her daughter, Josephine, the contestant in this proceeding. In the month preceding her death the decedent executed two wills, both in the handwriting of her husband; one bearing date the 14th, and the other the 20th, day of November, 1874.

By the first will she devised (together with her personal property) all her real property, specifically describing three parcels, situated, respectively, in Philadelphia, Pa., in Newark, N. J., and in Richmond county, N. Y., to her husband, William H. Lyman, in trust for her daughter, Anna Josephine Lyman (now Mrs. Nicholas, the contestant), "with full power to sell and convey the same, or any part thereof, and invest the proceeds in such property or securities in his name, as trustee, as he shall deem best for the estate; the said estate not to be delivered up to my daughter during the natural life of my husband, the trustee above named; and I desire all increase in my estate, and all income, over and above the living and other necessary expenses of my husband and daughter, to be invested as my said trustee shall see best for the interest of said estate. On the death of my husband, all my property vested in him as trustee shall become absolutely the property of my said daughter, Josephine." By the second will she devised all her property to her husband, the said William H. Lyman, absolutely.

It is not open to question that, under the statutes of this state, the fee of the Richmond county property was, by the first will, vested in the daughter, Josephine, subject only to be divested by a sale under the power conferred on the trustee, and to the partial interest of the husband in the rents, issues, and profits during his life. This will was, upon the petition of said William H. Lyman, duly admitted to probate in the office of the register of wills in the city and county of Philadelphia on the 7th day of January, 1875, and letters testamentary were on the same day issued to him; and thereafter he caused an exemplified copy of the same to be filed in the office of the surrogate of the county of Essex, N. J., and also in the office of the surrogate of the county of Richmond, N. Y. He immediately entered into possession of the property passing under said will, and from the date of the probate of the same until the date of his death, which occurred on the 8th day of August, 1893, he was, as executor and trustee, in receipt of the rents, issues, and profits thereof, and applied them, under the terms of this will, to the use of himself and of his daughter; and, in addition to this, he exercised the power of sale conferred upon him by this will. It also appears from the evidence that on one occasion said William H. Lyman asked his daughter to unite with him in giving a mortgage upon the Newark property, which she did, in the presence of Minnie D. Lyman, the proponent of the will now in question, and that subsequently the said Minnie D. Lyman asked her to give her a mortgage upon her (the daughter's) reversionary interest in the Staten Island property to secure her for money loaned to William H. Lyman. On the 26th day of April, 1882, William H. Lyman married Minnie Duke, the proponent herein. She was his third wife. He died on the 8th day of August, 1893, leaving a last will and testament, which was duly admitted to probate in the office of the surrogate of the city and county of New York on the 28th day of November, 1894; and on the same day letters testamentary were issued to Minnie Duke Lyman, the executrix named therein. In and by said will he gave to his wife, Minnie D. Lyman, all of his property, of any kind whatsoever, that he may own at the time of

his death.    On the 22d day of September, 1893, the said Minnie D. Lyman filed with the register of wills in the city of Philadelphia a petition to set aside the probate of the will of Josephine M. Lyman, proved on the 7th day of January, 1875, and for the probate of the will of said Josephine M. Lyman, dated the 20th day of November, 1874; and on November 6, 1893, after hearing the testimony of the witnesses and the argument of counsel, it was ordered and decreed by the register that the said petition be dismissed.    On the 28th day of December, 1893, the said Minnie D. Lyman filed in this court a petition for the probate of said will of said Josephine M. Lyman, dated the 20th day of November, 1895.    There are two matters to be determined in this proceeding:    (1) Is the proponent equitably estopped from the right to invoke the interference of this court in admitting this will to probate or not?    If not, (2) has the factum of the will been proved to the satisfaction of the court?

1. It must be remembered that William H. Lyman drew both wills, a period of only six days intervening between them, and that both were in his possession at the time of the death of his wife, Josephine M. Lyman; that he elected to cause to be admitted to probate the one bearing date the 14th day of November, 1874, and qualified as executor and trustee thereunder, and that he proceeded to and continued to administer the estate under said will until the time of his death; that he never showed this paper either to his daughter or to his subsequently wedded wife, the present proponent; that she (the proponent) never saw it until after his death, when she found it in a bundle of papers which he handed her a short while before his death; and that she found the two wills together in the same bundle.    At the time of the death of Josephine M. Lyman, her husband was the one most interested in her estate. He had both wills in his possession.    He was the executor named in both, and it was in his power to offer for probate whichever he saw fit.    He chose to accept the less estate rather than the greater. Why should he not be bound by his election?    It was his own free act and deed.    There was no coercion about it.    It was entirely voluntary on his part.    Then why, it may be asked, did he elect to take a life estate only, when he could as readily have taken an absolute estate?    The reason is made plain by the testimony of the proponent herself, who says he had mentioned the fact of a last will, but said he was afraid to probate it, lest a prior wife, from whom he was divorced, might claim an interest in the property. It is claimed on the part of the proponent that there is no election here, and that, even though there were, no forfeiture follows, but simply a question of compensation, and also that there is no estoppel, for the reason that there was no inconsistency in the act of Mr. Lyman, because there was nothing that he did under the prior will that he could not have done under the later will, and whatever was done by him in no wise prejudiced the contestant. Whatever the rights of the proponent are in this proceeding, they are derived through and under William H. Lyman, so that she stands before the court in precisely the same position that he would, had he instituted it in his lifetime.    By his acts during life he surrendered and released the estate of inheritance purporting to have

been given by the paper now propounded, and elected, instead thereof, to accept, and did, as a matter of fact, accept, a lesser estate, under another instrument. Moreover, it is in evidence that repeated representations were made by him to his daughter, the contestant, that the fee of the real property was in her, and that, relying upon these representations, she obligated herself personally for $3,800 for his benefit, and secured the obligation by a mortgage upon a portion of the real property devised to her by the will which it is now sought to overthrow. It is a well-settled principle of equity that when a party has, by his declaration or representation, induced another to act in a particular manner, he will not afterwards be permitted to deny the truth of his declaration, if the consequence would be to work an injury to such other person. See In re Rusko, 34 Hun, 334, and cases cited. The proponent seeks to take this case out of the operation of that principle by showing that the mortgaged premises were worth at least the amount of the bond and mortgage, and consequently the contestant was not injured. This is not an answer to the contention of the contestant. The mere likelihood that there will be no pecuniary loss does not take away from Mr. Lyman's conduct its effect of an equitable estoppel. The case of Bates v. Gillett, 132 Ill. 287, 24 N. E. 611, would seem to have a direct application. The plaintiff, who claimed to have an interest in the lands in question, had held himself out to be the guardian of certain infants, under the will of their grandfather. For 20 years he managed the property, dealt with it, and leased it in his name, as guardian. During all that time the children had understood that they were the owners, deriving their title under the will mentioned, and not until after they had contracted to convey a good title did the plaintiff assert his claim. The court said "that it would be grossly inequitable to now permit the assertion of title by the complainant. At least, he does not come into equity with conscience, good faith, and reasonable diligence. His delay is wholly unexplained, and it must be held that his acquiescence for the length of time indicated amounts in equity to a complete bar to the relief sought by complainant's bill." In Foote v. Foote, 61 Mich. 181, 28 N. W. 90, it was held that when 14 years have elapsed since the death of the testator, the will being notoriously in existence, and accessible throughout that time, it is too late for one of the heirs, who had agreed to another scheme of distribution, to prove the will, and claim benefits under it inconsistent with his former agreement. A second will is only provable on an allegation that it has been discovered since the probate of the first will, and that by it other persons besides those who took under the first will are entitled to some share of the estate. In the case at bar the will now propounded was never lost or mislaid, and was not discovered, because it was in the possession of Mr. Lyman, the sole beneficiary, or under his control, from the time of its execution until the day of his death, a period of almost 19 years. If, therefore, Mr. Lyman would have been estopped, the present proponent, claiming no more rights than he had, is now subjected to the same principle of equity.

2. The factum of the paper now propounded having been put in issue by the answer of the contestant, it is not alone sufficient that the formal execution and publication of the same be shown; but the questions whether the testator intended to make the particular will now offered for probate, whether it conformed to her real wish, and whether in fact this particular instrument is her will, are all elements of the factum of the will, which are to be determined by a considerate examination of all the facts and circumstances attending the transaction. This will was witnessed by Joseph M. Cowell and Herbert H. Brower. Joseph M. Cowell died before the same was offered for probate, leaving Herbert H. Brower not only the sole surviving witness of the same, but also the only person living who was in the room at the time it was executed. He testified that previous to the execution of this will the testatrix, who was his sister, "made a remark to me that her husband was not quite satisfied with the other will that was made, and she would have to make another. Q. Did you have any conversation with her with reference to Josie [her daughter, the contestant] on the subject of the will? A. I made the remark to her that I thought Josie ought to be taken care of and looked out for. Q. What did she say, if anything? A. She made no reply at that time, but, after this will was executed, she said that Josie would have to take her chances with the rest of the world." All this was said within six days from the time that the testatrix had made, while on her deathbed, the most natural and just will for any mother, leaving a husband and only child 12 years old, to make. The circumstances surrounding the execution and publication of the will were these: The will is in the handwriting of William H. Lyman. Mr. Lyman called the witness Brower into the room. The witness Cowell finally came into the room. He had been informed what he came in for by Mr. Lyman. Mr. Lyman then took the paper out of his pocket, and read it over. Then, together with Mr. Brower and Mr. Brower's father, who was present, he bolstered his wife up in bed. He then put a pen in Mrs. Lyman's fingers, and held the ink bottle in his hand. After the paper was signed he took it away from her, and passed it over to the witnesses to sign. After they had signed it was passed back to Mr. Lyman. The witness Brower testified that the testatrix signified her acceptance of the will, and when asked how she did this, other than by putting her name to it, he replied, "By Mr. Lyman asking her if that was her last will, in reply to which she bowed her head;" and also, in reply to a question, that she said nothing to the witnesses specially. This is the testimony as to the execution and publication of the will by the only living witness. This witness also testified on his direct examination, in answer to the question whether, at the time she executed the instrument, she was in her right mind, that "she appeared to be. She was more or less under the influence of stimulants to quiet her pain." And on cross-examination he said he meant by stimulants "opium suppositories." In answer to the question, "Do you know whether or not she was under the influence of these opiates at the time she executed this will?" he testified, "In my opinion, no more than she was at any other time." And to the question, "She was as much under the

influence of opium then as she was at any other time?" he testified, "I think so." The contestant testified that she was in the house in Philadelphia where this will was executed; that for some time previous, and continuously until the time of her death, opium suppositories were administered to her mother, the testatrix, and in addition thereto a solution of morphine alternately every two hours; and that the effect of these opiates upon her was, "They always clouded her," and "seemed to produce a sort of stupor." With these facts confronting it, the court is asked to hold that the factum of the will has been proved, and that the same be admitted to probate. Leaving out of consideration the question of undue influence, as well as the testamentary capacity of the decedent, the most that could be claimed by the proponent is a presumption that the statutory formalities in the execution, publication, and attestation of the paper now propounded were complied with. Such a presumption may arise, and the court be justified in concluding that every essential requirement was complied with, as witness the case of the testator, the late Homer A. Nelson (141 N. Y. 152, 36 N. E. 3), but whether such a presumption arises in any particular case depends upon the facts of that case. In the case at bar I cannot do otherwise than find that there is not only an utter failure of direct proof to establish the statutory formality of a request by the decedent to the witnesses to sign their names as such, but that, on the contrary, the testimony forbids the finding of any presumption that there was such a request.

The petition must be dismissed. Decreed accordingly.