### ORMSBEE *v.* PIPER.

1. EXECUTORS AND ADMINISTRATORS—VALIDITY OF LETTERS—COLLATERAL ATTACK.

Letters of administration cannot be attacked in a collateral proceeding on the ground that there was no necessity for the appointment of an administrator.

2. SAME — UNCOLLECTED CHOSES IN ACTION — RIGHT OF POSSESSION—AGREEMENT FOR DISTRIBUTION.

An administrator duly appointed without appeal is entitled to the possession of the uncollected choses in action belonging to the estate in the hands of the widow's executor, although, there being no debts against the estate, the heirs and the widow have agreed upon an amicable division thereof, without administration.

Case made from Mason; McMahon, J. Submitted February 6, 1900. Decided March 6, 1900.

Replevin by Hamilton C. Ormsbee, administrator of the estate of Erastus N. Ormsbee, deceased, against

George F. Piper, executor of the last will and testament of Mary A. Ormsbee, deceased. There was a judgment for defendant, and plaintiff assigns error. Reversed.

*Fitch & Reek*, for appellant.

*M. B. Danaher*, for appellee.

HOOKER, J. The finding of fact in this cause shows that Erastus N. Ormsbee died intestate on April 14, 1895, leaving an estate consisting of a team, wagon, some farming tools, and a mortgage for $1,900; also, an undivided half interest in certain lands. He owed no debts. He left surviving him a widow, Mary A., and three children, Hamilton, Charles, and Grace. All were adults, except Grace, who was a minor. A petition for administration was filed, but no hearing or other proceedings were had upon said petition at that time, for the reason that the widow (who was the legal guardian of Grace) and the children made an amicable agreement, which was put in writing by the judge of probate and was signed by them. The following is a copy:

"IN THE MATTER OF THE ESTATE OF ERASTUS ORMSBEE, DECEASED.

"*Whereas*, said deceased departed this life at his residence, in the township of Summit, Mason county, on April 14, 1895, and was possessed at the time of his death of personal estate of the value of two thousand two hundred dollars ( $2,200.00 ) or thereabouts; and

"*Whereas*, there are no debts against the estate of the said deceased, and of the personal property thereof, after an allowance of the household goods and two hundred dollars ($200.00) of other personal property from said estate to his widow, Mary A. Ormsbee, as provided by statute, there remains only a certain mortgage for one thousand nine hundred dollars ($1,900), and interest upon the same for one year, of one hundred and thirty-three dollars ($133.00), amounting in all to two thousand thirty-three dollars ( $2,033 ), upon the following-described real estate, to wit: The west half of the northwest quarter of section eight, in township seventeen north, of range seven-

teen west, given by one Joanna Mills, and dated April 11th, 1894:

"Now, therefore, the undersigned, Mary A. Ormsbee (for herself, as widow of said deceased, and for Gracie B. Ormsbee, a minor, as her guardian), Hamilton C. Ormsbee, and Charles E. Ormsbee, all heirs and all of the heirs at law of said deceased, do hereby agree to divide the personal estate of said deceased hereinbefore mentioned (the amount of said mortgage and interest) without administration of said estate, and do hereby agree to accept as payment in full, as the proportion thereof due each of us, the following amounts: Mary A. Ormsbee, widow, six hundred eighty-three dollars ($683); Mary A. Ormsbee, as guardian of Gracie, four hundred and fifty dollars ($450.00); Hamilton C. Ormsbee, four hundred fifty dollars ($450.00); Charles E. Ormsbee, four hundred fifty dollars ($450.00).

"And it is also hereby agreed by and between the parties to this instrument that this settlement shall be understood as having been made on the 11th day of April, 1895, and that the payments of the said several amounts to the parties hereto shall become due as payments upon said mortgage shall become due, and in proportion to the amount due each, and that the interest upon said mortgage, now payable yearly at the rate of seven per cent. per annum, shall be paid to the said parties at the same rate upon the several amounts due each of them by this agreement, and that both the principal and interest as aforesaid shall be payable to the parties hereto, or to their heirs and assigns.

"And for the true and faithful performance of all and every of the covenants and agreements above mentioned, the parties to these presents bind themselves each unto the other.

"In witness whereof, the parties to these presents have hereunto set their hands and seals the day and year, May 31st, 1895.

[Signed]    "MARY A. ORMSBEE.
            "MARY A. ORMSBEE,
               "Guardian of
                  Gracie B. Ormsbee.
            "HAMILTON C. ORMSBEE.
            "CHARLES E. ORMSBEE."

No order upon or record of this transaction was made by the probate court. The widow seems to have retained

the custody of the mortgage, and received some interest upon it. She died testate in 1898, and on May 24th of that year Piper was appointed executor. Four days later Hamilton C. Ormsbee was appointed administrator of Erastus N. Ormsbee's estate, and on June 1, 1898, he brought replevin against the executor for the mortgage.

The court held, as conclusions of law, that, there being no debts, it was competent for the heirs to make any fair agreement they chose for the distribution of the estate; that no contingency has since arisen requiring the appointment of an administrator and the repudiation of the agreement, and it was not competent for Hamilton to seek an appointment as administrator for the purpose of annulling the agreement; that the guardian of Grace had authority to make the agreement. Judgment was entered for the return of the property. Meantime proceedings had been instituted by the plaintiff for foreclosure of the mortgage, and the brief states that these have gone to decree. The interest is in arrears several years upon the mortgage.

We cannot, in this collateral action, say that there was no necessity for the appointment of an administrator. That was a question for the probate court, and no appeal was taken. It is true that the conclusions of law contain the statement that it was not necessary; but, if we treat that as a determination of fact, it was unimportant, because the probate court has determined otherwise, and its order stands unreversed. The letters of administration are valid, and cannot be attacked in this collateral proceeding. We are cited to several authorities in support of the defendant's claim, but we shall see that they do not support it. In the case of *Needham* v. *Gillett*, 39 Mich. 574, the question arose on appeal from the order appointing the administrator. The case of *Brown* v. *Forsche*, 43 Mich. 492 (5 N. W. 1011), was a claim that the administrator had prematurely distributed the estate. The court held that he had not done so. In *Foote* v. *Foote*, 61 Mich. 181 (28 N. W. 90), the children of the testatrix, Mahitibal Foote, all met at the house of one of their num-

ber, Elisha, and agreed that a note given by the latter had been paid. It was produced and surrendered, and he cut his name off, upon an agreement by Elisha that he would pay the funeral expenses, which he subsequently did. This was in 1867. Elisha Foote died in 1882, and his son Frederick was appointed administrator in January, 1883. Subsequently Gilbert Foote was appointed administrator with the will annexed of Mahitibal's estate, and filed a claim before commissioners upon said note for allowance. It was disallowed, but upon appeal the court excluded proof of the settlement, directing a verdict for the claimant. This was held to be error. The only question, then, was whether anything was due from Elisha to the estate, and, as it was conceded that there were no debts against the plaintiff's estate, all parties interested were held estopped to claim anything from Elisha upon the note, which was at the time in the hands of the plaintiff. The case of *Letts* v. *Letts*, 73 Mich. 138 (41 N. W. 99), throws no light upon the question, and we are unable to find the case of *McCleary* v. *Menke*,[1] cited by defendant's counsel.

Many of the courts hold that administration is necessary; that neither legatees nor heirs can sue any person in respect of the assets of an estate, but an executor or administrator, nor legally distribute the estate among themselves; and that payment of a debt due the deceased to any one but a legally-constituted executor or administrator will not protect the debtor. The authorities will be found collected in 1 Woerner, Adm'n, § 200. An exception to this rule is found in many States, viz., that where there are no debts, and the heirs have succeeded in collecting, and have by executed agreement actually distributed, the assets, no administration is necessary; and in Alabama a practice seems to exist whereby equity may make distribution when it affirmatively appears that the only necessity for an administrator is to make distribution. 1 Woerner, Adm'n, § 201. In Illinois it is held that an agreement

[1] See 109 Ill. 294, erroneously cited in defendant's brief as 109 Mich. 294.

among the heirs is revocable until completely executed. *Patterson* v. *Patterson*, 74 Ill. App. 321. The case of *Foote* v. *Foote*, *supra*, contains this language:

"The legal estate only in personal property vests in the administrators; the equitable estate therein is in the heirs, or other persons entitled to distributive portions thereof. The estate of the administrators therein is a trust for that purpose, and is created only for the purpose of laying hold of the estate and making such distribution. When there are no creditors, the heirs or legatees may collect, if they can, the estate together, and make such distribution among themselves as they may agree to and carry into effect, without the intervention of any administrators; and the law favors such arrangements. In such cases it is only where the heirs or legatees fail to make such collection and distribution that administration becomes necessary. When such arrangement and distribution have been made and executed, it will be binding, both in law and equity, as between the parties making it, whenever the rights of creditors do not intervene. And, where there are no creditors, the heirs or legatees may divide up and distribute the personal property of the decedent, without converting it into money, in such manner as they see fit; and when such division has been executed, even though it is not such as the decedent has made by his will, or such as the law would make when there is no will, it will be binding upon all the parties to the agreement. * * * By the terms of the claimed settlement in this case, all the estate was disposed of, and the heirs with whom Elisha, Sr., made the settlement were fully satisfied, and among whom was the heir who has been appointed administrator of Mrs. Foote's estate. It is not claimed any fraud was practiced upon either side in making the settlement, or any mistake made. All the parties to the agreement were familiar with the facts and circumstances under which it was made. If such settlement was made as claimed, we think it was upon a sufficient consideration, and all the parties present and participating therein or assenting thereto are bound thereby, and estopped from making any claim to said note or to any of the proceeds thereof."

Nowhere do we find that an administrator duly appointed without appeal can be denied the uncollected choses in action yet belonging to the estate, upon the

ground that the heirs have agreed that there should be no administration of the estate. We do not wish to intimate that the contract was not valid and binding, but there is nothing in it that transferred the title or the right to the custody of this mortgage to the widow, or to any other of the parties to it. Had the mortgagor seen fit to pay it to one of them, it may be that the several shares could have been recovered by action; but she did not pay, and it is not clear that any or all would have had a right of action upon the debt. The only possible objection to an administrator is the provision in the agreement that the parties should divide the personal estate, without administration, according to an apportionment therein agreed upon. But they have not divided the amount of the mortgage, and perhaps they could not get it to divide. The survivors have now taken proper steps to enforce collection, and, when it shall be collected, the contract may perhaps settle the proportions to which they are respectively entitled.

The judgment is reversed, and one will be entered here in favor of the plaintiff for nominal damages, with costs of both courts.

The other Justices concurred.