In the Matter of the Estate of ALICE WEBSTER, an Infant.

Surrogate's Court, New York County, April 30, 1934.

*Harry R. Kohn*, for Miner B. Webster, guardian.

*Alvin C. Cass*, referee.

*George L. Naught*, for the American Surety Company of New York.

*Clarence McMillan*, special guardian of Alice Webster.

*Frank M. Patterson*, for the special guardian.

DELEHANTY, S. To the report of the referee on this guardian's accounting proceeding exceptions have been filed by the guardian and by his surety. The accounting party is the domiciliary guardian of the infant. At the time of his appointment all of the property of the infant was located in Texas. It consisted of real estate there

which was productive of income. Following his appointment here as domiciliary guardian he applied in the appropriate court in Texas and was there named ancillary guardian of the infant. In his character as domiciliary guardian in the State of New York he filed in this court a bond in the sum of $29,000. In his character as ancillary guardian in the State of Texas he filed there a separate bond of the same surety company in the sum of $6,000.

The income of the Texas real estate received by him amounted to several thousand dollars. The law of that State required that no removal of funds from that State be made except upon prior authorization. In respect of this income he procured from the Texas court only a single order. This by its terms authorized him to remove from the State of Texas something less than $800 of these funds.

Eventually proceedings were had in Texas which resulted in his removal as ancillary guardian of the infant. Pursuant to Texas law, service of process was made upon the guardian outside the State of Texas. He appeared neither personally nor by attorney in that State in such accounting proceedings. Eventually the Texas court surcharged the ancillary guardian in his capacity as such with substantially $17,000. There is nothing to indicate whether there was an actual scrutiny of the guardian's handling of the funds though the indications are that the order of surcharge was entered substantially on default.

Various other proceedings were had in Texas which resulted ultimately in a judgment against the surety upon its bond given in behalf of the ancillary guardian in Texas. The surety paid a sum representing the full amount of the bond given there. The case of *American Surety Co. of New York* v. *Fitzgerald* (36 S. W. [2d] 1104) reports this controversy. The Court of Civil Appeals of Texas there held (p. 1107) that the appointment of the guardian as domiciliary guardian in New York gave him no authority over the ward's estate in Texas and that his authority in respect of such estate in Texas " resulted exclusively from his appointment as guardian by the Probate Court of Dallas County." The court held further that the ancillary guardian in Texas had obligated himself to administer the estate under the supervision and direction of the Probate Court of Dallas county " and in obedience to Texas laws." It is plain that the Texas court held that it had exclusive authority in respect of the ward's property in Texas and that it was empowered to make complete inquiry respecting the ancillary guardian's handling of such property.

In the proceeding in this court the referee first received some evidence designed to establish the actual disposal of the money

withdrawn from the State of Texas and possessed here by the domiciliary guardian. Before the conclusion of this inquiry respecting such funds and their application, the special guardian for the infant moved to strike out all the evidence taken and offered as conclusive proof the judgment roll of the Texas court in the proceeding against the ancillary guardian. This judgment roll was received and the determination of the referee was eventually predicated upon the legal theory that that proceeding established conclusively the obligation of the accounting domiciliary guardian. The referee's findings and his opinion held the domiciliary guardian liable upon the basis of such decree of the Texas court for the amount of the surcharge there found less the actual payment subsequently made by the surety who executed the bond for the ancillary guardian in Texas.

The objecting surety company and the domiciliary guardian here assert that such decree of the Texas court has no binding effect. The surety here further urges that since there was presented no evidence in contradiction of the accounting domiciliary guardian's claim of proper disbursement of his ward's funds this court should set aside the report and findings of the referee not only but should enter a decree approving the accounts of the domiciliary guardian in all respects and discharging him and his surety here from liability.

The issue thus stated is purely one of law. The question is whether the decree of the Texas court, entered upon personal service outside the State of Texas and not followed by appearance of the ancillary guardian in person or by counsel in the Texas court, is entitled to " full faith and credit " in this jurisdiction and whether (assuming such credit) it adjudicates this issue. The ancillary guardian had applied in Texas for his appointment and thereby had rendered himself amenable to Texas law in his capacity as such ancillary guardian. There seems to be no reason why the judgment so obtained against him in that capacity should not be entitled to the same weight here as if it had been rendered after personal service of process upon him in the State of Texas. The exceptions predicated upon this claim of insufficiency of the process resulting in the decree are unsound and are overruled.

As stated above, the Texas court has ruled that the courts of that State had exclusive control over the property of the ward in Texas and over the income received from such property. They have held that the sole forum for the adjudication of disputes respecting the handling of such funds by the ancillary guardian was in the Texas courts and that such courts had power to surcharge the ancillary guardian as such for his removal from the State of Texas of the property of the ward without authority of the courts of that

State. The Texas court held that this court had no jurisdiction whatever in respect of the conduct of the ancillary guardian. It is clear upon the record, therefore, that the judgment is one which has been entered against the ancillary guardian in that capacity only and is one which is predicated only upon his acts as such. Whether the decree is enforcible as a personal judgment against the guardian is not here in issue.

There can be no doubt that the ancillary guardian under the law of the State of Texas is a personality different from the domiciliary guardian appointed in the State of New York. The Texas court in its opinion carefully points out that fact. It is familiar law that a judgment against the same person in one capacity is not a judgment against him in another. (*Collins* v. *Hydorn*, 135 N. Y. 320; *Bank* v. *Dowdy*, 175 Mo. App. 478; *Pardee* v. *Mutual Benefit Life Insurance Co.*, 238 App. Div. 294, 296; *Dodds* v. *McColgan*, 125 Misc. 405; *Matter of Ebbets*, 149 id. 260, 267.) The opinion of CARDOZO, J., in *Helme* v. *Buckelew* (229 N. Y. 363) points out that in the case of an executor, who derives his title from the will and not from the appointment, a judgment in the court of *original* jurisdiction has been held to be conclusive in the State of ancillary or secondary administration; but that the title of other representatives is dependent entirely upon the grant of the State, makes him the agent of a foreign sovereignty, and renders him accountable only to the courts which appointed him (pp. 366, 367). The Texas court has plainly held to this view of the responsibility of the ancillary guardian. There is ample authority that a representative who derives his authority from a sovereignty and not from the will (*i. e.*, an administrator, guardian, receiver, etc.) is responsible only to the jurisdiction which appointed him and a judgment against him is not an adjudication binding upon him in another character and in another sovereignty. (*Aspden* v. *Nixon*, 45 U. S. 467; *Stacy* v. *Thrasher*, 47 id. 44, 58; *Hill* v. *Tucker*, 54 id. 458, 466; *Doolittle* v. *Lewis*, 7 Johns. Ch. 44, 46; *Braithwaite* v. *Harvey*, 14 Mont. 208; 27 L. R. A. 101, and note.) The accidental fact that the representative in each sovereignty is the same human being does not alter the rule.

The judgment of the Texas court against this accounting guardian in respect of his acts as ancillary guardian in Texas is not conclusive in the courts of New York on an issue wherein the party is not the ancillary guardian appointed in Texas but is the domiciliary guardian appointed in New York. Accordingly the exceptions to the referee's report predicated upon his receipt of the Texas judgment and his holding that such judgment is conclusive in this pending proceeding are in all respects sustained.

The domiciliary guardian is shown by his report to have received in his character as domiciliary guardian appointed by this court substantial sums of money belonging to his ward. It is of no moment whether in the receipt of such funds he violated the laws of the State of Texas. Either rightfully or wrongfully he did in fact receive such funds and he must account for them here. By reason of the mistaken view of the special guardian and of the referee respecting the effect of the Texas decree, there was made no real inquiry as to the handling of the funds by the guardian appointed by this court.

The point urged that the failure to present proof involves necessarily the approval of the account as filed has no substance. The court has the obligation itself to scrutinize the accounts of its representatives and no infant's estate may be wasted nor may the assets of an infant be misappropriated by dint of resort to any technical legal theory. The inquiry into the conduct of the guardian will be continued before the same referee with direction to take a full report of the handling of the funds admitted in the guardian's account to have been received by him in his capacity as domiciliary guardian in this State and to take a full report of the handling of any other funds shown to have been received by such guardian in addition to those reported in his account. On that hearing the guardian may present any proof available to him of his actual expenditure of any of such funds for the benefit of his ward. The referee is directed to make a further report upon the completion of such inquiry.

Submit order sustaining the exceptions and remitting the report to the referee for further proceedings according to the terms of this opinion.