In the Matter of the Estate of LILLIAN C. RAINBOW, Deceased.

Surrogate's Court, New York County, October 23, 1936.

*Garry J. Fury*, for the petitioner.

*Cavanaugh & Konrad* [*Joseph H. Konrad* of counsel], for the respondent.

DELEHANTY, S. The last will of deceased was probated in New Jersey on May 15, 1934. In April, 1936, the executrix applied for and received ancillary letters testamentary from this court. In her capacity as ancillary executrix she is seeking in this discovery proceeding to recover as property of deceased some shares of stock of a corporation.

On this hearing it was shown that shortly prior to the death of deceased a plan was adopted whereby the rents of real property owned by this corporation were deposited in an account in the individual name of petitioner. It was shown, too, that in September, 1935, a stockholder's action was instituted in our Supreme Court, Westchester county, wherein respondent here alleged that he was a stockholder of the corporation in question, that petitioner here as an individual was also a stockholder, that in her individual capacity she had collected rents belonging to the corporation, and that she was indebted to the corporation therefor. In that action a judgment was entered against petitioner adjudging that she was indebted individually to the corporation as alleged. Findings were made in that action that respondent here is the owner of 291 shares of the corporation and that petitioner individually is the owner of 290 shares. That judgment against petitioner individually was entered on April 16, 1936. Her application for ancillary letters was filed in this court on April 15, 1936. Letters issued to her on April 25, 1936. This proceeding was instituted on May 27, 1936. If petitioner succeeds and establishes an estate title to the shares she will nullify the judgment in practical effect because she will thereby pass the corporate shares to herself as legatee and so (unless corporation creditor rights intervene) will avoid payment of the moneys adjudged to be due to the corporation. It seems clear enough that the institution of ancillary proceedings in this State had that objective.

For a full understanding of the issues it is necessary to know something of the corporation and of the dealings with its shares. The corporation was organized to take title to real estate owned by deceased. On transfer of the property 582 shares of stock were issued in five certificates. Two were for 250 shares each, one was for eighty shares, and the remaining two were for one share each. These last two certificates were undoubtedly issued to furnish stockholding qualifications to the directors. Nothing was done about these five certificates until shortly before November 1, 1932, when deceased died. She had long been ill of cancer. Her household included her husband and her sister, the respondent and the petitioner here respectively. It is quite apparent that during the forty days antecedent deceased's death there was discussion among

them all about the disposal of these shares. There was apprehension on the part of deceased that claims might be made against her estate because of transactions which she had had in the State of Florida. That was a motivating cause in the steps taken respecting the shares. A will of deceased dated September 23, 1932, provided for a gift of 290 shares to her sister and of 289 shares to her husband. In this will deceased stated that she desired them to have equal ownership in the corporation. The will disposed of only 579 out of 580 shares registered in deceased's name, and it failed to dispose of either of the single qualifying shares. A second will, dated September 29, 1932, omitted any mention whatever of the shares and made her sister the sole legatee of all but deceased's Florida property. That latter property was given to a brother of deceased. This will was probated, but not until May 15, 1934.

It is quite apparent from the record that it was the fear of claims arising out of deceased's Florida operations which caused the second will to be drawn. It had occurred to deceased and her advisers that a recital in the September 23, 1932, will of ownership of corporate shares might direct the attention of Florida claimants, if any existed, to this asset of deceased. For the purpose of transferring these certificates out of her name deceased indorsed in blank the three certificates standing in her name and had them sent by her New Jersey attorney to the attorney for the corporation. Her attorney procured one of the qualifying shares to be returned to deceased by the holder of it (a former employee) and forwarded that as well on deceased's direction. The attorney for the corporation testified that he received by mail the three indorsed certificates, also the certificate for the one qualifying share. He also testified specifically that he received at about this same time the fifth certificate, the one-share certificate standing in the name of respondent. With the three certificates for 580 shares indorsed in blank by deceased the attorney for the corporation received a letter from deceased's New Jersey attorney saying that the purpose of sending the certificates to him was to effect a transfer to deceased's husband and to her sister of equal ownerships in the entire issued capital stock of the corporation. The attorney for the corporation put the shares into his office safe and did nothing about them prior to deceased's death.

From the death of deceased in 1932 the sister and the husband of deceased dealt with the corporation as if it were owned by them. It was their controversies over its real property which eventually resulted in the stockholder's action already mentioned. At no time in that action was any claim of ownership by the estate

suggested by petitioner here. She was a party only in her individual capacity. She made no protest against findings holding respondent to be the owner of 291 shares and petitioner individually the owner of 290 shares of the corporation's stock. The complaint asserted equal share ownership by respondent and petitioner. Her verified answer in that Supreme Court action denied every allegation in the complaint. If that denial was based upon the now asserted claim of estate ownership of all the shares there is no explanation for petitioner's failure as executrix of the estate of deceased to intervene and to prove estate ownership in that litigation. In her individual capacity her default admitted the status of stockholder claimed by plaintiff. In her quality as executrix of deceased and by the authority of the letters testamentary issued to her in New Jersey, petitioner could have instituted an action against respondent here for the recovery of the property which she now claims to belong to the estate of deceased. It was unnecessary for her to procure ancillary letters here. It may be that she preferred not to assert title to these shares as domiciliary executrix. In the estate tax report which she made pursuant to New Jersey law she was required to list in detail " all the personal property wheresoever situated owned by the decedent   *   *   *   at the time of death." She was required to state in Schedule B of that report " all the corporate stocks   *   *   *   and other investment securities owned by the decedent at the time of death." She was required to state in Schedule C of that report whether or not any transfers had been made by deceased within two years of her death. She verified this tax report on April 11, 1935, and listed no shares in this corporation as the property of the estate; and specifically denied that any transfers of property had been made by deceased within two years prior to her death. Her devious course respecting these shares permits no accurate appraisal of her intent in what was done.

The report of the New Jersey Tax Department shows a " net taxable estate " though the corporate shares here in controversy are not listed. Presumably inclusion of the shares would increase the taxable estate. No New York creditors are here seeking any relief. If the transactions of deceased in Florida resulted in the creation of valid claims against her estate such claimants may be entitled to knowledge of the title now asserted in behalf of this estate. They would look for information in the domiciliary State, of course. This ancillary administration is not likely to come to the attention either of the taxing authorities of the State of New Jersey or of persons who might have claims enforcible in the domiciliary State. If petitioner were to be successful here complete control of the corporation would pass into her hands and she

would have no duty to account to any one but herself as domiciliary executrix. Her failure to report in the New Jersey administration the property which she now says was at all times estate property permits at least the inference that she would continue to withhold that information.

Against the foregoing background it is necessary to test the validity of the defenses interposed by respondent; and to determine whether this court will permit its processes to be invoked in this ancillary administration.

Respondent asserts that petitioner is barred by the judgment of the Supreme Court of this State and asserts that the adjudication in that action establishes against all persons whomsoever his title to the shares now sought. No finding as to the exact number of shares owned by a stockholder is necessary in a stockholder's action. It suffices in such an action *prima facie* that the plaintiff is of record a stockholder. The adjudication made in such an action is in essentials an adjudication between the corporation and the person alleged to be indebted to it. The fact that in the judgment roll here in evidence (respondent's Exhibit 13) findings of fact are included which recite the detail of ownership of shares does not conclude that issue even if it were to arise again between the parties to that judgment. (*Donahue* v. *New York Life Insurance Co.*, 259 N. Y. 98, 102.) An adjudication binding upon a person in one character is not necessarily binding upon him in another. " One suing or being sued in his official or representative capacity is, within the eyes of the law, a stranger to any right or liability which he possesses as an individual." (*Pardee* v. *Mutual Benefit Life Ins. Co.*, 238 App. Div. 294, and cases cited therein. See, also, cases cited in *Matter of Webster*, 151 Misc. 572, 575.) The defense of former adjudication urged by respondent is held, therefore, to be insufficient to establish title in respondent, though for reasons hereafter stated the proceedings in the Supreme Court action have a bearing on the controversy.

The defense of ownership based upon an alleged gift by deceased requires extended comment. In the first place it should be noted that certificate No. 4, which was one of the qualifying shares issued January 3, 1930, was sent to *deceased* (petitioner's Exhibit 3) on January 9, 1930. The only written evidence of its receipt by *respondent* is contained in the stub of the stock certificate book in evidence as respondent's Exhibit 2. That stub shows that respondent receipted for this certificate on January 27, 1936, more than three years after deceased died. It is not inconsistent with the record here to assume that deceased retained that certificate from the date it was delivered to her until it reached the attorney

for the corporation. The letter of the New Jersey attorney for deceased dated September 24, 1932 (respondent's Exhibit 18), discloses the motives of the parties in respect of the stock transfer. The suggestion in that letter that " this transfer can be dated back as having already taken place " permits the inference that deceased intended to conceal her property from her creditors. It does not necessarily follow that she intended to part with title in her lifetime. Rather is it indicative of an intention to make a testamentary gift which would not disclose the existence of this asset. The letter which transmitted the certificates is dated October 1, 1932, two days after the actual will of deceased was signed. This letter requested the attorney for the corporation to hold the certificates. It describes them as " duly signed by Mrs. Rainbow and witnessed by me." It says that new shares are to be issued " when all the shares of stock are accounted for." The qualifying certificate standing in the name of Rose Schwartz (respondent's Exhibit 6) shows no date on the blank assignment of it. The attorney for the corporation testified that he could not fix the date when he got that back. If he did not get it before deceased died then his instructions forebade action on the intended transfers. The testimony of the New Jersey attorney plus the attending circumstances establishes that the certificates which are collectively in evidence as respondent's Exhibit 5 and which total 580 shares were indorsed by deceased in blank and transmitted in that form and that the assignments were filled out later. The letter of transmittal (respondent's Exhibit 4) is dated October first as already noted. The assignments purport to be dated October 2, 1932. That latter date, according to the calendar, was a Sunday. It is not to be supposed that mail sent on Saturday, October first, from Asbury Park, N. J., to an address in Bronxville, N. Y., would arrive on Sunday, October second, and so it must be supposed that the dates filled in were put there at some later time without consulting the calendar.

To establish a gift through the intervention of a third party it must be shown that this third party was the agent of the donee or at least was not the agent of the donor. The claim here made is that the transfer of the certificates to the attorney for the corporation was a complete delivery to the donee. The attorney for the corporation has been described as such up to this point in order to differentiate him from the New Jersey attorney who had only the status of attorney for deceased. The New York attorney was, however, equally the attorney for deceased. The corporation was organized by him at the behest of deceased. It was a vehicle for the operation of deceased's business. The attorney's connection with it was due to his representing deceased and was incidental

to that representation. He had no status as attorney for the corporation except for the reason that he was the attorney for deceased. The transmission of the share certificates to him was a transmission to an agent of deceased. The terms of the transmission are not fully disclosed perhaps. The New Jersey attorney has taken refuge in a claim of privilege. He failed to attend to be examined before the court and his deposition had to be taken in the State of New Jersey. It may be that matters could be shown in addition to those disclosed by the exhibits but on the basis of the record there is failure to meet the requirements for proof of a valid gift through a third party. (*Vincent* v. *Rix*, 248 N. Y. 76.)

It does not follow that respondent must be required in this proceeding to deliver up the shares which he has. If they are not needed for the satisfaction of claims against deceased and if in part they were not validly given to respondent they became through the will the individual property of the petitioner here. She had right in these shares and dominion over them of a sort which permitted her to vest in respondent the right of possession of them. It has already been noted that for a year and a half after the death of deceased her will was left unprobated and that another year passed before the report of assets required by the State of New Jersey was filed. It has also been noted that still another year passed before any steps were taken to establish estate ownership in these shares. In that three and a half year interval petitioner and respondent dealt with the corporation and its property without regard to estate interest in it. It was not until the spring of 1935 that conflicting demands for delivery of the certificates in the possession of the New York attorney showed any challenge of the *status quo* which had existed for two and a half years. Petitioner's demand upon the attorney in 1935 for delivery of the certificates was a demand in her individual character. Her demand for the certificates, in the indorsement of which the respondent is named, was a demand for his account and not one adverse to him. She did not testify at all. Hence the report by the attorney of the tenor of her demand stands admitted by her. That demand implied ownership by respondent of the shares now claimed. She told the attorney that she could care for respondent's shares better than he could. When the stockholder's action followed, the default eventually suffered by petitioner who was individually a defendant there can be construed at least to be an admission of stockholder's status then resident in respondent. In her capacity as legatee of these shares she could (in the absence of detriment to estate creditors) make that admission and bind herself thereby. (*Blood* v. *Kane*, 130 N. Y. 514.) The courts recognize that when the administration has been completed the title of the legatee relates back to the date of death. (*Brewster*

v. *Gage,* 280 U. S. 327, 334.) The courts may determine that the fiduciary title acquired by an estate representative, who is also a legatee, is merged into an individual title where there are no intervening claims; and may permit direct enforcement of rights by the individual. (*Anderson* v. *Carlson,* 201 App. Div. 260.) Even when a legatee appropriates the subject-matter of the legacy without formal administration he can be charged only with the value to the extent necessary to make good to creditors. (*Matter of Mullon,* 145 N. Y. 98.) When administration is necessary solely to protect creditors the administration stops when the creditors are protected. (*Matter of Davis,* 232 App. Div. 7; *Woodhouse* v. *Phelps,* 51 Conn. 521; *Hibbard* v. *Kent,* 15 N. H. 516; *Foote* v. *Foote,* 61 Mich. 181, 190; 28 N. W. 90.)

Within the principles enunciated in the cases cited it is proper here to hold that on this record petitioner has failed to establish a sufficient basis for adjudging a title to these shares to be in her *as an estate representative.* Her title is challenged by the answer. The chronology of events already stated shows that her motives in this proceeding are properly suspect and that she is using the form of estate administration and the ancillary administration in this court to accomplish a result which, individually, she might fail to accomplish. The court deems that the conduct of petitioner in respect of these shares evidences either knowledge on her part of facts which would supply the lack of proof in respondent's claim of gift and would establish it or that by her conduct she recognized a moral or legal right of respondent to the shares on some other ground and has estopped herself from proceeding ostensibly as an estate representative against respondent.

No adjudication here made can or should bar the claims of creditors of deceased. It may well be that if occasion arose both petitioner and respondent would be compelled individually to respond to the claims of creditors because they are transferees without consideration of property which should be applied to the payment of deceased's debts. If no such rights of third parties should require recovery of the property then it should be and is held to be the fact that the informal administration of the estate was completed prior to the inception of this proceeding and that under the authorities already cited and particularly *Anderson* v. *Carlson* (*supra*), the rights, if any, of the petitioner here in the shares in question are to be pursued by her in her individual capacity. Of any issue so presented this court has no jurisdiction.

The court finds that on this record there is no estate interest shown to exist in the shares in question and hence dismisses the proceeding.