J. Irwin Shapiro, J.
In this action for a declaratory judgment in which the defendants Leo and Bernard Batner have counterclaimed for judgment declaring the rights of the parties as they claim them to be, the latter have moved for summary judgment as prayed for in their counterclaim. The plaintiffs, in accord with the movants’ contention that no triable issues of fact are presented, oppose the motion solely insofar as the declaration of rights sought by the defendants is concerned and seek summary judgment as prayed for in their complaint.
The plaintiffs’ testatrix Magdalena Sperling died a resident of this county on August 5, 1959. Her last will and testament dated April 23,1959, was duly admitted to probate in the Surrogate’s Court, Queens County, on October 13, 1959, and letters testamentary were on that day duly issued to the plaintiffs, who have qualified and are acting as such at this time.
During the lifetime of the testatrix and on the date of her death, she was the owner of 600 shares of the capital stock of the defendant Sperling Pork Store, Inc. and 51 shares of the capital stock of the defendant Sperling Bealty Corp. By paragraph Fourteenth of her will, the plaintiffs’ testatrix bequeathed 350 shares of her Sperling Pork Store, Inc. stock to the defendant Leo Battner and 250 shares thereof to the defendant Bernard Battner, to be theirs absolutely and forever. In paragraph Fifteenth of her will, she bequeathed 39 shares of her Sperling Bealty Corp. stock to said Leo Battner and 12 shares thereof *52 to Bernard Battner, likewise to be theirs absolutely and forever. By paragraph Eighteenth “ all Federal, State or other inheritance, estate, transfer or succession taxes which may be imposed upon or measured by the property that passes by paragraph ‘ fourteenth ’ and paragraph ‘ fifteenth ’ under this Will ” were charged against the same and the executors were directed to deduct from the share or interest of each beneficiary “ the proportionate amount needed to pay any and all such taxes.”
On June 15, 1953, the testatrix, individually and as executrix under the last will and testament of her deceased husband, entered into a stockholders ’ agreement with the other five stockholders which recited that 600 shares of the capital stock of the defendant Sperling Pork Store, Inc. were issued to her. Another, identical stockholders ’ agreement executed by her individually on June 15, 1953, with such stockholders, recited that 51 shares of the common no par value stock of the defendant Sperling Realty Corp. were issued to her. Said agreements provided, in pertinent part; that upon the death of any stockholder, the surviving stockholders, parties to said agreements, would have the option of purchasing in proportionate amounts the shares of the deceased stockholder of Sperling Pork Store, Inc., at the par value thereof ($100 per share) and of the Sperling Realty Corp. stock at the “fixed value thereof of $100.00 a share”. Each of said corporations was party to the respective agreements and in paragraph “ 7 ” thereof it was provided that certain specific language referring to said agreements shall be “ written stamped or printed upon the face ” of all shares of stock “ to be issued pursuant to the terms of this agreement and all shares of stock heretofore issued. ’ ’
On November 2,1959, all of the individual defendants exercised their options under said stockholders’ agreements and in proportionate amounts paid to the plaintiffs the sum of $65,100, for which checks totaling said sum were receipted that day by the plaintiff Walsh as coexecutor. On November 5, 1959, these checks were certified at the request of the plaintiffs by Federation Bank & Trust Company, Citizens Branch, upon which they were drawn. To date, however, these checks have not been presented for collection; they are still held by the plaintiffs.
By an agreement dated February 10, 1960, executed by the plaintiffs and the moving defendants, to be in effect until the completion of the final Federal and State estate tax audits and the payment of all State and Federal estate taxes apportioned to the stock in the two corporations in the estate of Magdalena Sperling, deceased, the receipt of the proportionate *53 number of the decedent’s 651 shares of stock purchased by the four individual defendants, pursuant to the option exercised by them under the stockholders’ agreements, was acknowledged. The moving defendants Leo and Bernard Rattner, the legatees of such shares, and the principal officers and majority stockholders besides the testatrix of the two corporations, having purchased the stock interests of the other two individual defendants thus becoming together with the plaintiffs the sole parties in interest, agreed not to sell any of the stock acquired pursuant to the option. The plaintiffs, on the other hand, agreed not to withhold unreasonably their consent but they could demand a surety bond to the estate not to exceed $25,000, if a sale is to take place, “ to insure payment of Federal and State taxes apportioned to speeding pork store inc., and speeding realty corp., stock.” They also agreed that the $65,100 paid by the individual defendants, as aforesaid, shall be held by them “until distributed for any purposes, inclusive of payment of Estate taxes, which lea rattner and Bernard rattner are responsible for as apportioned in the Estate of magdalenasperling, Deceased, as may be hereafter directed by any Court or Judge.” “ The turnover of the stock ” to the four individual defendants was stated to have been made “ without prejudice and with the consent and at the request of lea rattner and BERNARD RATTNER. ’ ’
The clear and unambiguous language of the will evidences the intent of the testatrix to bequeath the 651 shares of stock in the corporate defendants to the two moving parties as specific gifts. (Matter of Hicks, 272 App. Div. 594, affd. 297 N. Y. 924.) Accordingly, the bequest operated as a conveyance to the donees as of the date of the death of the testatrix. (Matter of Dunigan, 177 Misc. 212, 214.) The plaintiffs, however, could have reduced such shares to their possession and held them until it was apparent that they were ‘1 not necessary to use * * * for the payment of debts and the expenses of administration ” (Matter of Utica Trust & Deposit Co., 148 App. Div. 525, 528) for at least the normal period of administration following the issuance of letters, which at present is seven months or six, if notice to creditors is published. (Surrogate’s Ct. Act, §§ 207, 208.) Upon the completion of the administration of the estate, the tit] ' of the legatees to their specific gifts would have related back to August 5,1959, the date of death of the testatrix. (Brewster v. Gage, 280 U. S. 327, 334.)
Even if the bequeathed shares of stocks had been delivered to the moving defendants “without formal administration” they would have been charged “with the value to the extent *54 necessary to make good to creditors. (Matter of Mullon, 145 N. Y. 98.) When administration is necessary solely to protect creditors the administration stops when the creditors are protected.” (Matter of Rainbow, 163 Misc. 732, 742.) In Matter of Utica Trust & Deposit Co. (supra, p. 528), the Appellate Division of the Third Department put it this way: “ Any interest he [the executor] has in the property so bequeathed is thus qualified, and when he assents to the title of the legatee, thereby conceding that it is not necessary to use it for the purpose of administration, such assent is irrevocable and the title of the legatee becomes complete, the legatee, however, being liable to respond to the executor if the result proves that it is necessary for the payment of debts or expenses of administration. (Heaton Surr. Pr. [1909 ed.] § 843; Blood v. Kane, 130 N. Y. 514.) ” (To the same effect, see 6 Jessup-Redfield, Surrogate’s Law and Practice, § 4716, p. 51.)
The plaintiffs, however, did not “ assent to the title ” of the moving defendants in the shares of stock owned by their testatrix at the time of her death and bequeathed by her as aforesaid. These shares were impaired by the stockholders’ agreements, which made them subject to the option to purchase by the individual defendants upon the terms and conditions and within the time provided by such agreements. These options were exercised on November 2, 1959, following the issuance of letters testamentary on October 13, 1959, and checks aggregating $65,-100, representing the purchase price fixed at $100 per share, were receipted by the plaintiffs by a writing dated November 2, 1959.
The fact that the checks were not presented for payment and are still in the plaintiffs’ possession is not material to the issues of law here presented since it was the plaintiffs who caused them to be certified. Such certification was equivalent to an acceptance (Negotiable Instruments Law, § 323), the drawers and all indorsers, if any, being thereby discharged from liability thereon (§ 324). As was observed by the late Chief Judge Pound of the Court of Appeals in Wachtel v. Rosen, (249 N. Y. 386, 390): “ The certification of a check by the bank is equivalent to payment. When the holder of a check sees fit, instead of receiving the money, to take the obligation of the bank for payment, the transaction is of the same effect as if he drew the money and then bought the bank’s obligation with it.”
The plaintiffs concede in their brief that the shares of stock here involved and owned by the decedent at the time of her death were specifically bequeathed to the moving defendants by her will executed on April 23,1959; that There is no question *55 that these Stockholders Option Agreements [dated June 15, 1953] are valid, and were signed by the Testatrix and that she “ was aware of these Agreements subsequent to June 15, 1953, and as recently as March 19, 1957, when another of the stockholders, eked geler, died and the Testatrix, magdalena sperling, waived her rights under the said agreements, and elected not to purchase ” the shares of stock in the corporate defendants “ owned by the said ered geler at the time of his death (see ‘ exhibits II ’ and1 III ’ annexed to the moving papers herein).” They urge, however, that “upon pure theory of equity ”, the $65,100 paid on the exercise of the aforesaid stockholders’ option agreements “ should become part of the Residuary Estate ” and that it “ would be unfair and inequitable to permit the moving defendants to ‘ eat their cake and have it too ’. Thus, the moving defendants would be in the position of receiving the stock in question, and, then, receiving back the $65,100.00 (less taxes) from the estate.”
But that would have been the precise situation had not the option agreements been exercised. The $65,100 consideration therefor would then not have been paid and the decedent’s stock, under the specific bequests in her will, would have been held by the plaintiffs during the period of administration until it was apparent that it was not necessary to use it for the payment of debts and expenses of administration, at which time the stock would have been turned over to the legatees whose title would have related back to the date of death. (Matter of Utica Trust & Deposit Co., 148 App. Div. 525, 527-528, supra; Matter of Rainbow, 163 Misc. 732, 741, supra.) The interest of the moving defendants under the will of their benefactress was thus “ qualified ” whether it was in kind, i.e., the shares themselves, or the price for which they were substituted by reason of the exercise of the subsisting option agreements to which such shares were subject. In an analogous situation presented in the Surrogate’s Court, Kings County, in 1953 (Matter of Becher, 204 Misc. 523), the late Surrogate Rubenstein held at page 530: “ Testator’s stock was in existence at his death, and the trustees took title to it subject to the infirmity of the agreement (Decedent Estate Law, § 37) and were, likewise, entitled to take advantage of its benefits —the sale price, which equity cannot deny to them (Van Tassel v. Burger, 119 App. Div. 509; Matter of Shymer, 136 Misc. 334; Matter of Tabbagh, 167 Misc. 156, 161). The alteration in the form of the trust asset which resulted from the sale of the stocks was not a revocation of the bequest of such property (Decedent Estate Law, § 39), as the interest of income beneficiaries and remaindermen of the trust are capable of fix *56 ation; the corpus of the trust, upon its termination, being payable to the remaindermen upon the same basis as the purchase price paid for the stock.” (Emphasis supplied.)
So too, in the case at bar, the alteration of the specific gifts made to the moving defendants from stock to cash represented by the price paid pursuant to the options under the stockholders’ agreements to which such stock was subject upon the death of its owner, the testatrix herein, was not a revocation of the bequest of such property, nor did the moving defendants otherwise waive or renounce their rights or legacies under the will. The court finds that the price paid to the plaintiffs for the decedent’s stock, totaling $65,100, stands in place, thereof to be distributed to the moving defendants under paragraphs Fourteenth and Fifteenth of the will in the proportion in which the stock was therein bequeathed, subject, however, to the payment of taxes as provided in paragraph Eighteenth of said will.
The contentions by the plaintiffs that it is conceivable that the tax authorities might place a value upon the stock bequeathed under the will in excess of the option price paid therefor, in which event the moving defendants would “unquestionably renounce their specific legacies since it would not pay them to make claim to the $65,100.00 if the taxes were more than that sum ” and that the “ converse of the proposition is not quite so clear ” are hypothetical and cannot be the subject of judicial pronouncement, certainly not in the present posture of this litigation, absent the facts required, facts which at best are at this time uncertain if not altogether conjectural. All that this court can and does presently decide is embraced in the findings and conclusions herein set forth. There will be no direction, however, for an affirmative money judgment in favor of the moving defendants as prayed for by them in their counterclaim and sought by their motion for summary judgment. The more provident course to follow is to leave the payment of their legacies under the will, in light of the determination here made, to the Surrogate who has jurisdiction of the complete administration of the estate, including the $65,100 which now stands in place of the 651 shares of stock owned by the testatrix at her death and bequeathed by her as already described, subject to the payment of taxes not yet ascertained.
There will be no costs to either side. Proceed on notice.